**Wayne DRUMBARGER, Appellant,**

*v.*

**STATE of Alaska, Appellee.**

**No. A–770.**

Court of Appeals of Alaska.

March 21, 1986.

8

Robert H. Wagstaff, Anchorage, for appellant.

Cynthia M. Hora, Asst. Atty. Gen., Office of Sp. Prosecutions and Appeals, Anchorage, and Harold M. Brown, Atty. Gen., Juneau, for appellee.

Before BRYNER, C.J., and SINGLETON and CARLSON,* JJ.

## OPINION

BRYNER, Chief Judge.

Wayne Drumbarger was convicted, following a jury trial, of three counts of sexual assault in the first degree and three counts of sexual abuse of a minor. Former AS 11.41.410(a)(4); former AS 11.41.-440(a)(2). Prior to sentencing, the state dismissed two of the first-degree sexual assault charges. Superior Court Judge James A. Hanson sentenced Drumbarger to consecutive presumptive terms totaling twenty-one years in prison. Drumbarger appeals, challenging his conviction and sentence on numerous grounds. We affirm the conviction but remand for resentencing.

## FACTS

During May and June of 1983, Drumbarger lived in Wasilla with his wife, Lynette, and his two children. One day Lynette walked into their home and saw Drumbarger standing next to the bed with his pants unzipped. T.D. was lying on the bed. Her underpants were off and there was a white substance on her abdomen, which Lynette identified as semen. Lynette asked T.D. what had happened, and the girl responded that she "had sucked his [Drumbarger's] bottom." When Lynette asked T.D. if she meant Drumbarger's penis, T.D. said yes. Lynette then spoke with Drumbarger, who admitted having sexual contact with T.D. but denied sexually penetrating the child.

The following year, a neighbor of Drumbarger's heard that T.D. had been sexually assaulted by her father. The neighbor asked Drumbarger if the report was true. Drumbarger admitted molesting T.D., and the neighbor reported the information to the Division of Youth and Family Services. Alaska State Trooper Rollie Port subsequently contacted and interviewed T.D., who told Trooper Port that she had "sucked" her father's penis.

Port later interviewed Drumbarger. Drumbarger admitted sexually abusing his daughter on three separate occasions between April and June of 1983. According to Drumbarger, on each occasion, he initially had T.D. perform fellatio on him; he then "balled" the child. Drumbarger explained that, by "balling," he meant that he rubbed his penis and testicles on T.D.'s abdomen and between her legs until he ejaculated. Drumbarger told Port that, after the third incident, his wife discovered his assaultive conduct toward T.D. He claimed that no further incidents of abuse occurred.

Based on this confession, the state charged Drumbarger with one count of first degree sexual assault (fellatio) and one count of sexual abuse of a minor ("balling") for each of the three incidents of molestation. He thus faced a total of six charges. Lynette Drumbarger testified before the grand jury that indicted Drumbarger. Drumbarger's confession was related to the grand jury by Trooper Port. T.D. also appeared before the grand jury. During her testimony, she was accompanied by Lynette Drumbarger, who was given special leave by the presiding judge of the superior court to be present during her daughter's grand jury testimony.

## HEARSAY

At Drumbarger's trial, the state did not call T.D. as a witness. Instead, it relied on the testimony of Lynette Drumbarger and Trooper Port, both of whom were permitted to give testimony concerning out-of-court statements in which T.D. described her father's sexual assaults. This testimony was admitted over the objection of Drumbarger's trial counsel. Dr. George Brown was also permitted to testify, over a hearsay objection by the defense, about a conversation he had with T.D. while examining the child. Drumbarger claims on appeal that admission of T.D.'s statements violated the hearsay rule. Each of the

---

* Carlson, Superior Court Judge, sitting by assignment made pursuant to article IV, section 16 of the Constitution of Alaska.

statements Drumbarger challenges on hearsay grounds will be considered individually.

## A. *Lynette Drumbarger's Testimony.*

■ At trial, Lynette Drumbarger was permitted to testify concerning T.D.'s statement that she had sucked Drumbarger's "bottom." Drumbarger objected to this testimony on hearsay grounds. He renews the objection on appeal. We conclude, however, that T.D.'s statement was admissible under the hearsay exception for excited utterances.

A statement is an excited utterance if it relates "to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition." Alaska Rule of Evidence 803(2). Whether a statement qualifies as an excited utterance necessarily depends on the facts of each case, and a ruling by the trial court on the issue will not be reversed unless clearly erroneous. *Lipscomb v. State*, 700 P.2d 1298, 1306 (Alaska App.1985). T.D.'s statement was made immediately after she was discovered by her mother and moments after she had been sexually assaulted by her father. The statement itself addressed the circumstances of the assault. Other courts have not hesitated to find that similar statements by sexual assault victims qualified as excited utterances. *See, e.g., United States v. Nick*, 604 F.2d 1199, 1202 (9th Cir.1979); *Lancaster v. People*, 615 P.2d 720 (Colo. 1980); *State v. Bouchard*, 639 P.2d 761 (Wash.App.1982). We hold that admission of Lynette Drumbarger's testimony concerning T.D.'s statement was not barred by the hearsay rule.

## B. *Trooper Port's Testimony.*

Trooper Port was also permitted to testify concerning a statement made by T.D. when she was interviewed by Port. Prior to Port's testimony, Drumbarger's trial counsel, in cross-examining Lynette Drumbarger, implied that T.D. did not understand what a penis was when, after telling Lynette that she had sucked Drumbarger's "bottom," she indicated that, by "bottom," she meant "penis." In response to this cross-examination, the state attempted to establish, through Port's testimony, that T.D. knew what the word penis meant.

Port was questioned about his initial interview with T.D. Specifically, Port was asked if T.D. said anything to him indicating that she understood what a penis was. Over Drumbarger's hearsay objection, Port was allowed to testify, in relevant part, as follows:

[Prosecutor] Q: And could you ... tell us precisely what [T.D.] said which indicates she understands what part of her (sic) body her daddy's penis is?

. . . . .

[Trooper Port] A: I asked her this question if I can go ahead and ... read it. [T.D.], can you and I talk about you and your dad for a minute? Okay. [T.D.], has your daddy ever done anything to make you feel bad? The answer, I sucked his penis. Oh? When did that happen? And we continue on and then there's more.

Q: Okay. And were there other specific discussions regarding things she did to his penis or things he did with her hands?

A: Yes.

Drumbarger argues that this testimony was impermissible hearsay.

■ Under the Alaska Rules of Evidence, hearsay is defined to include any "statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." A.R.E. 801(c). In this case, the stated purpose of allowing Port to testify about T.D.'s out-of-court statement was not to prove the truth of the matter asserted in T.D.'s statement—that is, that T.D. had engaged with Drumbarger in an act of fellatio—but rather to establish that T.D. knew what a penis was and understood her mother's previous reference to the word. Thus, under A.R.E. 801(c), Port's testimony technically did not amount to hearsay.

Drumbarger nevertheless argues that the testimony went beyond what was necessary to establish T.D.'s knowledge and that the nonhearsay purpose of the testimony was only a pretext for its admission. We reject this argument. Certainly, the trial court had broad discretion to exclude the challenged evidence if the court concluded that its probative value as nonhearsay was outweighed by potential prejudice stemming from the possibility of its use as hearsay. *See* A.R.E. 403 (allowing exclusion of relevant evidence when probative value is outweighed by the potential for prejudice). In the circumstances of the present case, however, several factors militate against finding that the trial court abused its discretion in admitting the evidence.

First, T.D.'s understanding of the word "penis" was affirmatively called into question by Drumbarger's trial counsel during Lynette Drumbarger's cross-examination. The issue was actually in dispute.

Second, T.D.'s out-of-court statement to Port was by no means the state's primary evidence of Drumbarger's sexual assault. To the contrary, Drumbarger's confession to Trooper Port was admitted in its entirety. Lynette Drumbarger testified concerning the statements T.D. made when Lynette discovered Drumbarger and T.D. together. Lynette Drumbarger also fully described T.D.'s appearance on that occasion, which provided strong circumstantial evidence of sexual assault. Given the compelling nature of this evidence, we believe it unlikely that the jury would have given undue weight to the challenged testimony for its impermissible hearsay purpose.

Third, and most significant, is the fact that the jury was independently aware of the statements T.D. gave to Port concerning Drumbarger's sexual acts. The full text of Drumbarger's confession to Port was admitted without objection for the jury's consideration. The confession consisted of questions by Port and answers by Drumbarger, which made it clear that, prior to Drumbarger's confession, T.D. had spoken with Port and had described her father's sexual acts.[1] Thus, to the extent the jury might have been inclined to use Port's trial testimony for its impermissible hearsay purpose, that use could not have been prejudicial, because the jury had already heard evidence disclosing the substance of T.D.'s statement to Port.

In summary, we hold that Port's testimony concerning T.D.'s statement was not hearsay. Its admission was not barred by the hearsay rule.

## C. *Testimony of Dr. Brown.*

Drumbarger also contends that it was error for the trial court to allow testimony by Dr. George Brown about a conversation he had with T.D. when he examined her for evidence of sexual assault. As part of its effort to establish T.D.'s awareness of sexual anatomy, the state asked Brown if he had spoken with T.D. Brown was permitted to describe the following conversation:

I asked her if anyone had touched her, I pointed to her genitalia and ... very clearly with her eye contact [T.D. was] saying I'm not going to talk about that.

Based on his eye contact with T.D., Brown concluded that T.D. had understood his question but did not want to answer it.

Drumbarger contends that Brown's testimony was inadmissible hearsay. Although this contention raises a potentially difficult evidentiary issue,[2] the issue is, at most, academic. Brown expressly refused to speculate about T.D.'s reasons for declining to answer his question, and he refused to express any opinion as to whether T.D.'s reticence was consistent or inconsistent with a prior sexual assault. Brown's testimony on this point centered entirely on the conclusion that T.D. understood his

---

1. For example, at one point during Port's interrogation of Drumbarger, Port asked, "When [T.D.] says that you put your penis in her mouth you know that she's not lying about that?"

2. Alaska Rule of Evidence 801(a)(2) defines a statement to include "nonverbal conduct of a person, if it is intended by [the person] as an assertion."

question. Assuming that this testimony was inadmissible hearsay, the error in its admission was, under the circumstances, plainly harmless.

## CORPUS DELICTI

Drumbarger next advances a related argument with respect to *corpus delicti.* In Drumbarger's view, the evidence that he has challenged on grounds of hearsay is particularly significant because it was the only evidence at trial that might arguably have satisfied the *corpus delicti* requirement. Thus, Drumbarger insists that admission of the challenged hearsay was prejudicial in a legal sense, apart from any prejudicial influence it might have had on the jury as a practical matter. We are unable to agree with Drumbarger's *corpus delicti* analysis.

■ The *corpus delicti* requirement precludes a criminal conviction based solely on the uncorroborated confession of the accused. In order to avoid unjust convictions, the *corpus delicti* rule requires that a confession be supported by independent evidence of the defendant's guilt before a case is submitted to the trier of fact. *Jacinth v. State,* 593 P.2d 263, 265–66 (Alaska 1979); *Armstrong v. State,* 502 P.2d 440, 447 (Alaska 1972). To establish *corpus delicti,* however, the state need not independently prove all of the elements of the crime. Rather, it need only introduce "substantial independent evidence which would tend to establish the trustworthiness of the statement." *Armstrong v. State,* 502 P.2d at 447 (quoting *Opper v. United States,* 348 U.S. 84, 93, 75 S.Ct. 158, 164, 99 L.Ed.2d 101, 107 (1954)).

■ In this case, we believe the *corpus delicti* requirement would be satisfied even assuming all of the challenged hearsay had been inadmissible. Drumbarger's confession encompassed three separate incidents, each of which involved the commission of two discrete offenses. Lynette Drumbarger's description of what she saw when she discovered T.D. and Drumbarger together strongly corroborates Drumbarger's confession as to the third incident of sexual

assault. The circumstances observed by Lynette Drumbarger made it obvious that T.D. had just been sexually assaulted by her father. T.D. was on the bed with her underpants off. There was semen on T.D.'s abdomen, and Drumbarger was standing next to her, zipping up his pants.

A more difficult question is whether the corroborative effect of Lynette Drumbarger's observations is sufficient to meet the *corpus delicti* rule as to the other two incidents described by Drumbarger. All three incidents to which Drumbarger confessed entailed virtually identical assaults. Each assault was perpetrated on the same victim. The three assaults occurred over a relatively short period of time—approximately three months. Although it is not difficult to envision situations in which the *corpus delicti* rule might require that a confession encompassing multiple crimes be corroborated by independent evidence relating to each offense, in the present case the three separate incidents and six separate crimes discussed in Drumbarger's confession are so closely allied in time and circumstance, and Lynette Drumbarger's observations are of such significant corroborative force, that the trustworthiness of Drumbarger's confession as a whole was sufficiently established. We conclude that the *corpus delicti* rule was satisfied.

## CONFRONTATION

Drumbarger also contends that the state's failure to call T.D. as a witness at trial deprived him of his right to confront the witnesses against him. This argument is raised for the first time on appeal. Because we have ruled that Trooper Port's testimony did not constitute hearsay and that Dr. Brown's testimony, if hearsay, was plainly harmless, the confrontation argument applies primarily to Lynette Drumbarger's testimony concerning the statements T.D. made immediately after being discovered together with Drumbarger.

The accused in a criminal prosecution has the right to be confronted by the witnesses against him. U.S. Const. amend. VI; Alas-

ka Const. art. I, § 11; Alaska R.Crim.P. 38. The right of confrontation is a fundamental one, essential to a fair trial. *Rubey v. Fairbanks*, 456 P.2d 470, 476 (Alaska 1969); *Lemon v. State*, 514 P.2d 1151, 1154 (Alaska 1973). This right protects two vital interests: first, it guarantees the defendant the opportunity to cross-examine the witnesses against him, so as to test their sincerity, memory, ability to perceive and relate, and the factual basis of their statements; second, it enables the defendant to demonstrate to the jury the witness's demeanor when confronted by the defendant, so that the inherent veracity of the witness is displayed in the crucible of the courtroom. *Lemon v. State*, 514 P.2d at 1153. *See also Stores v. State*, 625 P.2d 820, 823 (Alaska 1980).

■ The confrontation right operates independently of the hearsay rule. A violation of the right may be found even where a valid exception to the hearsay rule has been established, and, conversely, a violation of the hearsay rule can occur without encroaching on the protections of the confrontation clause. *California v. Green*, 399 U.S. 149, 155–56, 90 S.Ct. 1930, 1933–34, 26 L.Ed.2d 489, 495–96 (1970). Thus, even when a hearsay exception applies, the confrontation clause requires a high degree of reliability and trustworthiness, and a demonstrated need for admission. *Dutton v. Evans*, 400 U.S. 74, 91 S.Ct. 210, 27 L.Ed.2d 213 (1970).

■ We have found no confrontation clause cases in Alaska that are factually similar to Drumbarger's. At least one federal court, however, has addressed the issue of confrontation under circumstances virtually identical to those of the present case. *United States v. Nick*, 604 F.2d 1199 (9th Cir.1979), dealt with the sexual assault of a three-year-old boy:

> The assault occurred when Nick was babysitting [a] child. The child's mother had known Nick for many years, and the child was well acquainted with Nick. When the child's mother picked up the youngster, the child was asleep with Nick in a locked bedroom. The child's pants were unzipped. After she brought the child home, she observed "white stuff" in the youngster's clothing. The mother asked the child whether Nick had done anything to him, and the child responded, "Yeah, Eneas [Nick] stuck his tutu in my butt." The child also stated that Nick had hurt him and made him cry.

*Nick*, 604 F.2d at 1201.

The boy did not testify at trial, but the statements he made to his mother were admitted as excited utterances. On appeal, Nick asserted that his right to confrontation had been violated by admission of the statements. The Ninth Circuit Court of Appeals first recognized that cross-examination of the three-year-old child would have been impractical, even if he had been called to testify:

> The problem in this case is whether the confrontation clause prevented reception of the hearsay evidence because the declarant was not subjected to cross-examination at any time, and, as a practical matter, could not have been subjected to cross-examination even if he had been called as a witness by reason of his extremely tender years. If the sole method by which the confrontation clause could be satisfied was the opportunity to cross-examine the declarant in court either at the time the statement was made or at the time the statement was offered, the infant's statement could never be received in evidence.

*Id.* at 1202.

The court went on to analyze the reliability of the child's out-of-court statement, and, finding it to be reliable and trustworthy, concluded that no violation of the right to confrontation had occurred:

> It is extremely unlikely that the statement under these circumstances was fabricated. The statement was unquestionably material, and it was more probative as to the identity of the assailant than any other evidence, except Nick's confession. The declaration to his mother at the time of the event was more, rather than less probative than testimony

**14**

that he might have been able to give months after the event even if the district court would have found him competent. (Fed.R.Evid., Rule 601.) The interests of justice were served by admitting the declaration of this child, who was the victim of a sexual assault, and far too young to appreciate the implications of that assault.

Finally, that portion of the statement identifying Nick as the assailant is inherently trustworthy under all of the circumstances of this case. Extrinsic evidence established that Nick had the opportunity to commit the crime. The child knew Nick well, and he was not likely to mistake his assailant. The mother was not likely to have had any faulty recollection of the child's simple, shocking seven-word statement.

*Id.* at 1204. *See also United States v. Iron Shell*, 633 F.2d 77 (8th Cir.), *cert. denied*, 450 U.S. 1001, 101 S.Ct. 1709, 68 L.Ed.2d 203 (1980).

We believe the analysis employed by the Ninth Circuit Court of Appeals in *Nick* is appropriate and fully applicable to Drumbarger's situation.[3] We therefore reach the same conclusion reached by the court in *Nick* and find no confrontation clause violation in the present case.

### PROSECUTORIAL MISCONDUCT

■ Drumbarger asserts that the prosecutor at trial engaged in improper examination and argument. Initially, Drumbarger focuses on the prosecutor's reference to Drumbarger as "daddy" during the trial. According to Drumbarger, use of the word "daddy" was calculated by the prosecution to inflame the jury. This argument appears to us to have little merit. T.D., in her statements to Lynette Drumbarger and Trooper Port, referred to Drumbarger as "daddy." In interviewing T.D., Port adopted this usage. The same terminology was employed by Lynette Drumbarger and Trooper Port when they testified at trial, describing T.D.'s out-of-court statements.

**3.** We find *Nick* arguably distinguishable from the present case in one respect only. It is uncertain whether the victim's availability as a witness was disputed in *Nick*. Subsequent decisions of the United States Supreme Court have indicated that a finding of unavailability is generally necessary in order to satisfy the confrontation clause. *See Ohio v. Roberts*, 448 U.S. 56, 66, 100 S.Ct. 2531, 2538–39, 65 L.Ed.2d 597, 607 (1980). The precise scope of the requirement, however, is currently unclear. *See United States v. Inadi,* —— U.S. ——, 106 S.Ct. 1121, 89 L.Ed.2d 390 (1986). In the present case, T.D. was never found to be unavailable as a witness. However, Drumbarger's right to predicate error on the trial court's failure to make an express finding of unavailability is questionable. T.D. was two and one-half years old when she was assaulted, and, as in *Nick*, her competency to render any meaningful testimony at trial more than a year after the assaults is a matter of considerable doubt. Indeed, prior to trial, Drumbarger moved to dismiss his grand jury indictment, alleging, in part, that the state erred in calling T.D. to testify before the grand jury because she was incompetent. Although Drumbarger, in asserting his confrontation clause argument on appeal, points out that T.D. was physically available to testify at trial, he nevertheless continues to maintain that T.D. was not a competent witness when she testified before the grand jury. Thus, Drumbarger acknowledges in his brief on appeal that, when T.D. appeared before the grand jury, she "could for-

mulate no coherent answers to any of the prosecutor's questions for most of the time she was on the stand."

Under these circumstances, we believe that Drumbarger's failure to raise the issue of confrontation below is significant. T.D.'s statement to her mother was admitted at trial as an excited utterance. The excited utterance exception to the hearsay rule applies without regard to the availability of the declarant. *See* A.R.E. 803(2). In the absence of a confrontation clause objection by Drumbarger or an express request for a determination of the issue of availability, Drumbarger's hearsay objection gave the trial court no occasion to inquire into T.D.'s competency to testify as a witness. As noted in *California v. Green*, 399 U.S. at 155–56, 90 S.Ct. 1933–34, 26 L.Ed.2d at 495–96, in some situations, evidence may violate the hearsay rule without violating the confrontation clause. Thus, an objection based solely on a hearsay violation does not necessarily imply a confrontation clause claim. Given T.D.'s age at the time of the assault, her lack of responsiveness as a witness before the grand jury, and Drumbarger's claim that she was in fact incompetent as a grand jury witness, we conclude that Drumbarger's failure to raise a confrontation clause objection below precludes him from arguing that the trial court erred in failing to make an express finding as to T.D.'s availability as a witness.

Similarly, the word "daddy" was used by both the prosecutor and the defense counsel at trial. At no point did Drumbarger's trial counsel object to the state's choice of terminology. We find no error.

 Drumbarger next objects to the prosecutor's mischaracterization of the testimony of Charmaine Mastriano. Mastriano, a social worker, testified that she had observed T.D. play with an anatomical doll and that T.D. was apparently aware of what the penis was on the doll. In describing T.D.'s manipulation of the doll, Mastriano said, in relevant part: "She did touch it and [made] a motion to me."

During his rebuttal argument, the prosecutor misstated this testimony in the following manner:

He [Drumbarger] wants you to feel sorry for him? Think of the two and one-half year old girl that grabs a doll and starts sticking the penis up toward Char Mastriano's mouth.

At this point, Drumbarger's counsel objected. The objection was immediately sustained, and the court instructed the jury to disregard the prosecutor's remark because it was not supported by the testimony:

[Defense Counsel]: I would object. There wasn't any testimony to that.

THE COURT: Sustained. There was no testimony that it was toward her mouth. The jury will disregard that.

[Prosecutor]: Towards her.

Drumbarger's counsel did not move for a mistrial or ask for any further relief. There was no further objection, and the argument proceeded to a different point. Before the jury retired for deliberations, the trial court gave the standard instruction that arguments of counsel are not evidence.

 We conclude that these circumstances did not necessitate a mistrial. The trial court appropriately sustained Drumbarger's objection and admonished the jury to disregard the prosecutor's improper statements. In the absence of a motion for mistrial, we will not lightly assume that the admonition given by the trial court was

inadequate. *See Randall v. State,* 583 P.2d 196, 200 (Alaska 1978). Drumbarger further complains that, after the objection was sustained, the prosecutor compounded his initial mischaracterization of the evidence by stating, "towards her"—an apparent attempt to correct his original description of the movement T.D. made with the anatomical doll in Mastriano's presence. This statement, however, was not objected to and appears to be neither inflammatory nor seriously misleading. To the extent that it was inaccurate, we find no plain error.

 Drumbarger objects to two additional aspects of the prosecution's rebuttal argument. The first occurred in connection with the prosecutor's remarks concerning T.D.'s awareness of sexual anatomy. Drumbarger's trial counsel, during his closing argument, stated that T.D. was too young to know what she was talking about. He noted that T.D. told Trooper Port that Drumbarger had penetrated her "bottom" but that this statement was not borne out by Dr. Brown's medical examination of the child. In rebuttal, the prosecutor argued that T.D.'s reference to "bottom" could have meant that Drumbarger placed his penis between her legs. The prosecutor said, "[t]hink of your own common sense, own children, how easily [they'd] be confused as to whether the penis was inside of her or not." Drumbarger asserts that this reference to children was an appeal to the passions and prejudices of the jury.

The second challenged portion of the rebuttal argument involves references by the prosecutor to his reasons for failing to call T.D. as a witness. The prosecutor claimed that he did not "want to traumatize the child." He further stated: "I could bring the child in here and I guarantee some of you would be crying." Finally, he assured the jury: "I'm trying to be fair to Mr. Drumbarger, certainly fairer than he's been to his child." These references were apparently made in response to the final argument of Drumbarger's trial counsel, who similarly informed the jury that he had not called T.D. as a witness because he

wanted to avoid subjecting her to any further trauma, but who nevertheless criticized the prosecution for its failure to present the child's testimony.

Drumbarger did not object to either of the two challenged portions of the rebuttal argument. Our review of the totality of the final arguments convinces us that the challenged portions of the rebuttal argument were not, in context, obviously prejudicial. We therefore find no plain error. *See United States v. Young*, 470 U.S. —, 105 S.Ct. 1038, 84 L.Ed.2d 1 (1985); *Potts v. State*, 712 P.2d 385 (Alaska App.1985). We reject Drumbarger's claims of prosecutorial misconduct.

### ADDITIONAL ARGUMENTS AND CUMULATIVE ERROR

■ Drumbarger has challenged his conviction on several additional grounds, which may be rejected without extensive discussion. Drumbarger asserts that the superior court erred in denying, without an evidentiary hearing, his motion to dismiss the indictment. The motion was based on the contention that T.D. was not a competent witness and that Lynette Drumbarger was improperly allowed to be present before the grand jury during T.D.'s testimony. Even assuming that T.D.'s testimony was inadmissible because she was incompetent or because of her mother's presence, however, dismissal would be warranted only if the balance of the evidence before the grand jury was insufficient to support an indictment. *See Oxereok v. State*, 611 P.2d 913, 916 (Alaska 1980). Since ample evidence was presented to the grand jury apart from T.D.'s testimony, the trial court could properly deny Drumbarger's motion without an evidentiary hearing.

■ Drumbarger also assigns error to the trial court's failure to hold an omnibus hearing. It is undisputed that the originally scheduled omnibus hearing was vacated because neither Drumbarger nor the state had filed any motions prior to the deadlines specified in the superior court's pretrial order. The only prejudice Drumbarger ascribes to the lack of an omnibus hearing is

that no evidentiary hearing was held on his motion to dismiss the indictment. Yet the motion to dismiss was filed well after the omnibus hearing date had passed. In any event, we have held that no evidentiary hearing was necessary to resolve the motion to dismiss. Under the circumstances, we find no basis for concluding that cancellation of the omnibus hearing amounted to error.

■ Drumbarger further claims that he has been deprived of his right to a full record of the proceedings at trial. This claim arises from several bench conferences that were not picked up on the electronic recorder and that appear in the transcript only as "whispered conversation at the bench." In addition, Drumbarger notes numerous instances where individual words or remarks of witnesses or trial counsel are listed as "indiscernable." From all appearances, the omissions complained of by Drumbarger are insignificant. Drumbarger makes no specific claim of prejudice with respect to any particular omitted portion. He has apparently failed to make any effort to remedy the deficiencies in the record by the steps prescribed in the appellate rules. *See* Appellate Rule 210(k). We find no merit to Drumbarger's claim.

■ Drumbarger has also alleged that the cumulative effect of the errors committed by the trial court merits reversal of his conviction. Cumulative error requires reversal when the impact of errors at trial was so prejudicial that the defendant was deprived of a fair trial, even if each individual error was harmless. *See, e.g., State v. Martin*, 686 P.2d 937, 942–43 (N.M.1984). In this case, however, we have found merit in few of Drumbarger's claims, and what little error we have found is clearly harmless. We believe this is so even when its cumulative impact is considered. Because the record as a whole demonstrates that Drumbarger received a fair trial, his claim of cumulative error must be rejected. *See Hawkes v. State*, 644 P.2d 111, 113 (Okla.Crim.App.1982).

## SENTENCING ARGUMENTS

In addition to challenging his conviction, Drumbarger has contested his sentence. Initially, Drumbarger asserts that Alaska's presumptive sentencing statutes are unconstitutional. He similarly argues that the statutory restriction on eligibility for parole is unconstitutional. In *Dancer v. State*, 715 P.2d 1174 (Alaska App.1986), we considered and rejected claims identical to those advanced by Drumbarger. Our decision in *Dancer* governs this case. In keeping with *Dancer*, we find that the presumptive sentencing statutes did not violate Drumbarger's constitutional rights.

Drumbarger has additionally argued that he was deprived of the right to have his case considered by the three-judge sentencing panel. He contends that Judge Hanson avoided referring this case to the three-judge panel by engaging in impermissible negotiations with the prosecutor concerning dismissal of Drumbarger's charges. It is unnecessary for us to decide Drumbarger's argument. In imposing sentence, Judge Hanson concluded that consecutive sentences were mandatory under AS 12.55.-025(g). Since the date of Drumbarger's sentencing hearing, however, this court has held, in *State v. Andrews*, 707 P.2d 900 (Alaska App.1985), *petition for hearing granted* (Alaska, December 10, 1985), that trial courts have discretion under AS 12.-55.025(g) to impose concurrent sentences. Our decision in *Andrews* requires that Drumbarger's case be remanded for resentencing. The need for resentencing, in turn, renders Drumbarger's three-judge panel argument moot.

The conviction is AFFIRMED. The case is REMANDED for resentencing in conformity herewith.

COATS, J., not participating.