**Michael T. DUNKIN, Appellant,**

v.

**STATE of Alaska, Appellee.**

**No. A–1543.**

Court of Appeals of Alaska.

Oct. 11, 1991.

Averil Lerman, Preston, Thorgrimson, Shidler, Gates and Ellis, Anchorage, for appellant.

Cynthia M. Hora, Asst. Atty. Gen., Anchorage, and Charles E. Cole, Atty. Gen., Juneau, for appellee.

Before BRYNER, C.J., COATS, J., and ANDREWS, Superior Court Judge.*

* Sitting by assignment made pursuant to article IV, section 16 of the Alaska Constitution.

## OPINION

COATS, Judge.

Michael T. Dunkin was convicted, following a jury trial, of murder in the first degree, an unclassified felony with a maximum sentence of ninety-nine years of imprisonment. AS 11.41.100(a)(1). Superior Court Judge Beverly W. Cutler sentenced Dunkin to eighty-five years of imprisonment, recommending that Dunkin be ineligible for parole until he had served fifty years of his sentence. Dunkin appeals his conviction and sentence. We affirm.

Dunkin was convicted of murdering Julius Marshall, a black male employed as an auto mechanic, by shooting him three times in the head and neck at close range. At trial, the state's theory was that Dunkin shot Marshall in an unprovoked attack for racial reasons.

The killing occurred in Palmer on May 26, 1985. Dunkin, who was twenty-two years old, drove to Palmer from Anchorage with his brother James Stevens and Stevens' friend William Skinner to watch the races. They drove in Dunkin's green jeep. The jeep had a removable top with the words "Boofer hunter" on it; the top was not on the jeep at the time.[1] They spent the afternoon watching the races and drinking beer.

After the races, the three men went four-wheeling in the Knik River area. After about an hour, the jeep got stuck in the river and stalled. Dunkin got a ride to a store where he called for a tow truck. The towing business Dunkin contacted was the Roadrunner Autobody Shop, operated by Julius Marshall.

Dunkin returned to the Knik River and waited for the tow truck. Some time later, Dunkin saw Marshall's truck on the other side of the river pulling another truck out of the water. Dunkin was angry that Marshall was assisting someone else first, and went to Marshall to complain. When Marshall finished pulling out the first vehicle, he came across the river to Dunkin's jeep.

It took Marshall approximately half an hour to pull the jeep out of the river bed.

A group of people gathered to watch Marshall at work. Dunkin talked to one of the spectators, Timothy Dunahee, about how much he thought the job would cost. Dunkin told Dunahee he had $150. When Dunahee said he didn't think that would be enough, Dunkin stated that it didn't matter because he was "going to waste the old spook." Dunahee heard Dunkin refer to Marshall as a "boofer," a "nigger" and a "spook." While Dunkin was talking to Dunahee he had a loaded gun strapped around his waist.

Marshall got the jeep unstuck, but it still would not start and it had a flat tire. Dunkin offered to pay Marshall $150 if he would start the jeep; Marshall towed the jeep to his shop on the Palmer–Wasilla highway.

While Marshall was working on the jeep, Dunkin told him that his name was "Tom" and that he worked at Spenard Auto Supply. Neither of these two assertions was true. When Skinner asked Stevens why Dunkin was lying, Stevens said that Dunkin was going to beat up Marshall.

Marshall decided to push start the jeep. Dunkin, Stevens, and Skinner sat in the jeep, while Marshall pushed the jeep with his tow truck. After the jeep started, Dunkin got out of the jeep to pay Marshall.

Skinner saw Dunkin standing next to the tow truck and talking to Marshall. Skinner watched Dunkin pull out the gun and point it at Marshall; Marshall "crunched back" and then smiled as if he thought it was a joke. Dunkin smiled and pulled the trigger three times, firing shots into Marshall's head and neck. Marshall died as the result of these gunshot wounds.

Dunkin drove off in the jeep. As they drove away, Dunkin told Skinner not to worry because "[i]t's just a nigger. It's just a boofer."

One of Marshall's neighbors found his body and contacted the troopers. Other neighbors told the troopers that they had heard shots and had seen three people in a

---

1. "Boofer" is a derogatory term for a black person.

green jeep speeding away from Marshall's shop after the shots were fired.

Trooper Michael Brandenburger stopped Dunkin's jeep on the Glenn Highway near Fort Richardson. The gun was lying on the floorboard between the front seats. Dunkin, Stevens, and Skinner returned to the jeep and were escorted to Palmer by the troopers. During the drive, Dunkin told Stevens and Skinner to tell the troopers the following story: they went to the raceway, they did not go to the river, and Dunkin shot a couple of rounds in a field after the races.

When Skinner first spoke to the troopers he told them the story outlined by Dunkin. Skinner was arrested for first-degree murder on May 28. The next day Skinner told the troopers about the shooting. The charges against Skinner were dropped, and he testified at Dunkin's trial.

While in jail, Dunkin spoke to another inmate, K.B., about the murder. On one occasion Dunkin said that he and Marshall had argued about the bill after Marshall got the jeep running; Dunkin said he was mad because a "fucking nigger" was trying to "rip him off." On another occasion Dunkin told K.B. that Marshall was shot while Dunkin was playing with his gun.

The defense theory at trial was that the shooting was accidental. At trial, Dunkin testified that he remembered seeing the gun in his hand, and remembered a "boom," but could not see himself shooting anybody. Dunkin stated that at the time he was in Marshall's tow yard, he was "pretty intoxicated."

■ Dunkin's main contention on appeal is that the trial court erred in not making an adequate record of the bench conferences and that his attorney was ineffective in representing him because the attorney did not object to the incomplete record of the bench conferences.

Dunkin's trial took place in the superior court in Palmer in October 1985. Shortly before trial, the court system installed new electronic tape recording equipment in the courthouse. This new system did a poor job of picking up the bench conferences

held during the trial. Dunkin points out that several court rules require the trial court to record its proceedings. See Alaska Civil Rule 75(a); Alaska Administrative Rules 21(a), 35(a) and (c). However, the rules also provide procedures for dealing with gaps in the record. See Alaska Appellate Rule 210(h) and (k).

We begin our analysis with *Drumbarger v. State,* 716 P.2d 6, 16 (Alaska App.1986). In *Drumbarger,* the defendant claimed that he had been deprived of his right to a full record of the court proceedings when the electronic equipment did not adequately record several bench conferences and other small portions of the trial. This court denied Drumbarger relief, pointing out that Drumbarger made "no specific claim of prejudice with respect to any particular omitted portion" and that Drumbarger "failed to make any effort to remedy the deficiencies in the record by the steps prescribed in the appellate rules." In the instant case, unlike Drumbarger, Dunkin did make an effort to reconstruct the appellate record. However, the court and counsel were able to reconstruct only a small portion of the bench conferences. The transcript of the bench conferences shows that large portions of the conversations are missing.

In arguing for reversal of his conviction, Dunkin does not argue that the court erred in admitting or excluding any particular evidence. Rather, he argues that because neither the court nor his attorney assured that there was an adequate record of the bench conferences, he was deprived of his ability to prepare and bring a meaningful appeal. As an alternative, Dunkin argues that if this court does not find that the gaps in the record are *per se* prejudicial, we should place the burden of proof on the state to show that Dunkin was not prejudiced by the gaps in the record.

In arguing that we should find that the gaps in the record were *per se* prejudicial, Dunkin cites *United States v. Selva,* 559 F.2d 1303 (5th Cir.1977). In *Selva,* the court reporter became ill and was unable to stenographically transcribe counsels' closing arguments. The court·reporter at-

tempted to tape the arguments, but the tape recorder malfunctioned. Selva obtained new counsel for his appeal. The *Selva* court held:

> When, as here, a criminal defendant is represented on appeal by counsel other than the attorney at trial, the absence of a substantial and significant portion of the record, even absent any showing of specific prejudice or error, is sufficient to mandate reversal.

*Id.* at 1306 (footnote omitted). However, the *Selva* court emphasized that its holding only applied to "significant omissions." *Id.* at 1306 n. 5. Dunkin urges us to adopt the *Selva* rule.

In the first place, the *Selva* rule appears to be a minority rule. *See United States v. Antoine,* 906 F.2d 1379, 1381 (9th Cir. 1990); *United States v. Gallo,* 763 F.2d 1504, 1530–31 (6th Cir.1985); *State v. DeLeon,* 127 Wis.2d 74, 377 N.W.2d 635, 637 n. 2 (App.1985); *Cole v. United States,* 478 A.2d 277, 287 n. 15 (D.C.App.1984); *State v. Vitale,* 190 Conn. 219, 460 A.2d 961, 964–65 (1983); *State v. Rougemont,* 340 N.W.2d 47, 50–51 (N.D.1983). In the second place, even if we apply the *Selva* rule, we do not believe that Dunkin prevails. Dunkin's appellate counsel has a complete record of the trial except the bench conferences. She therefore has a record of what transpired before and after the bench conferences. She also has a record of what evidence went to the jury. Under these circumstances, we believe it likely that the *Selva* court would conclude that Dunkin was not missing a "substantial and significant portion of the record." Therefore, we conclude that Dunkin has not shown grounds for relief under the *Selva* standard.

We also conclude that Dunkin has not made any showing that he was prejudiced when his counsel failed to object to the court's failure to make a complete record of the bench conference. *See Risher v. State,* 523 P.2d 421, 425 (Alaska 1974) (in order to establish ineffective assistance of counsel, defendant must show by a preponderance of the evidence that trial counsel failed to perform at least as well as a lawyer with ordinary training and skill in the criminal law *and* must create a reasonable doubt whether counsel's conduct contributed to the conviction).

■ Dunkin next suggests that certain statements which the prosecutor made to the jury constituted plain error. During jury *voir dire,* the prosecutor asked five prospective jurors whether, if race were an issue in the case, the juror could give the victim, Marshall, a fair trial. The final time the prosecutor asked this question, he stated, "Do you promise me that you would give Julius Marshall, a black man, a fair trial, as well as the defendant, a fair trial?" At this point, defense counsel asked to approach the bench; Judge Cutler sustained the defense objection to this question. Following this conference, the prosecutor rephrased the question to "Do you feel that you can give the state as well as the defendant a fair trial in this case knowing that Julius Marshall is a black man?" Dunkin did not ask the court to take any further action. Later in the trial, at the end of his closing argument, the prosecutor stated that "Julius Marshall has a right that justice be done." Dunkin did not object to this statement.

On appeal, Dunkin contends that the prosecutor's admonitions to give Marshall a fair trial were seriously prejudicial. He contends the statement the prosecutor made in closing argument was a call to the jury to avenge the death of Marshall.

Dunkin did not request a curative instruction during *voir dire,* nor did he object to the prosecutor's statement during closing argument. Therefore, in reviewing these issues this court must apply the plain error standard of review. Alaska Criminal Rule 47(b). In order to establish plain error, Dunkin must prove that the error is:

> (1) so obvious that it must have been apparent to a competent judge and a competent lawyer even without an objection and (2) so substantially prejudicial that failing to correct it on appeal would perpetuate a miscarriage of justice.

*Potts v. State,* 712 P.2d 385, 390 (Alaska App.1985).

Dunkin points out that Marshall was not on trial and argues that the statements which the prosecutor made would tend to inflame the jurors' emotions because of the evidence that this was a racially motivated killing. However, the state could properly inquire of the jurors whether they would be racially prejudiced against Marshall. The trial court promptly responded to Dunkin's objections, and Dunkin never requested that the trial judge take further action. We do not believe there was sufficient danger of prejudice from the prosecutor's questions and statements that the trial court was required to take further action on its own without objection. We do not find plain error.

Dunkin next argues that Judge Cutler erred in recommending that the parole board not parole Dunkin until he had served fifty years of imprisonment. Dunkin points to the language of *Spencer v. State*, 642 P.2d 1371, 1377 (Alaska App. 1982), where we stated:

> Where an extended parole eligibility term is imposed, the court must specifically address the issue and set out with particularity its reasons for concluding that the parole eligibility term prescribed by statute would be insufficient to protect the public and insure the defendant's reformation.

However, in *Spencer* we were referring to a situation where the court has legally restricted the parole board from acting. AS 12.55.115. Judge Cutler merely made a recommendation; she did not legally restrict Dunkin's parole. The written judgment specifically provides that Dunkin is eligible for parole after serving the mandatory minimum period of time required by statute. Judge Cutler's recommendation is not binding on the parole board. *See Shagloak v. State*, 582 P.2d 1034, 1038 (Alaska 1978). As we pointed out in *Lawrence v. State*, 764 P.2d 318, 321–22 (Alaska App.1988), "[p]arole authorities should be better situated to judge [the defendant's] prospects for parole because they will have the opportunity to evaluate [the defendant's potential for parole] at a future time, after he has had an opportunity to respond to the effects of rehabilitation programs." Judge Cutler's recommendation does not prevent the parole board from exercising its best judgment at that future time.

In making the recommendation, Judge Cutler emphasized the seriousness of Dunkin's offense, which she found was a premeditated racial killing. She fully considered Dunkin's prior favorable record, but considered his prospects for rehabilitation to be guarded because of the serious nature of the offense and Dunkin's failure to accept full responsibility for the crime. Judge Cutler also emphasized the need to deter similar offenses. We believe that the reasons Judge Cutler gave are sufficient to justify her recommendation. We conclude that the sentence was not clearly mistaken.

The conviction and sentence are AFFIRMED.

MANNHEIMER, J., not participating.