IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | |
| | ) | No. 29658-0-III |
| Respondent, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| LEONARD WILLIAM BOSTON, | ) | UNPUBLISHED OPINION |
| | ) | |
| Appellant. | ) | |

SIDDOWAY, A.C.J. — Leonard Boston appeals his convictions for violations of

several provisions of the Uniform Controlled Substances Act, chapter 69.50 RCW. He

challenges the trial court's determination that inculpatory statements he made to a

Stevens County sheriff's detective were admissible at trial. He also challenges increases

in his period of confinement based on jury findings that he challenges for instructional

error and insufficient evidence.

We conclude that the State presented insufficient evidence to prove two school bus

stop enhancements in light of the instructions to the jury, which—whether or not

required—were given without objection, and are therefore law of the case. We reverse

those sentencing enhancements and remand for resentencing for the associated

convictions. We otherwise affirm.

## FACTS AND PROCEDURAL BACKGROUND

The Stevens County Sheriff's Department suspected Leonard Boston of dealing

heroin and conducted a number of controlled buys of heroin from his sister, Gail

Remington, at the home where she and her teenaged son lived with Mr. Boston. Based

on evidence developed through the controlled buys, the sheriff's department obtained and

served a search warrant at the Boston/Remington home. Mr. Boston, Ms. Remington, her

son, and Chas Loster were there at the time. All four were brought into the living room

where one of the detectives present read *Miranda*[1] warnings from a card to the group

before transporting them to jail. None was asked to sign a waiver of rights. The last

sentence read from the card was a question, "'Having these rights in mind do you wish to

talk to us now[?]'" Report of Proceedings (Nov. 5, 2010) (RP) at 51. Mr. Boston chose

not to make a statement.

A couple of hours after being booked into the Stevens County jail, Mr. Boston was

taken to a conference room to meet with Detective Brad Manke. The detective advised

Mr. Boston of the charges against him and asked if Mr. Boston wanted to speak to him.

Mr. Boston told the detective he was getting sick from not having heroin and needed

---

[1] *Miranda v. Arizona*, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966).

medical help because "[his] head [was] not clear." Clerk's Papers (CP) at 274. Mr. Boston asked Detective Manke to come back in a day.

The next day, Detective Manke returned to the jail and again spoke to Mr. Boston in the conference room. After he inquired how Mr. Boston was feeling, Mr. Boston said, "'Let's cut to the chase. What do you want?'" CP at 275. Detective Manke responded, "'I want to know about your heroin dealings.'" *Id.* Mr. Boston replied, "'I'm small time—not big time. I'm just a junkie keeping other junkies well.'" *Id.* The detective had not read Mr. Boston his *Miranda* rights and Mr. Boston had not stated that he wished to waive his rights. Mr. Boston then said his head still was not very clear and again asked that Detective Manke come back later. Once again, that ended the conversation.

Detective Manke returned to the jail a day or two later. At the outset of that conversation, Mr. Boston stated, "'I'd better talk to a lawyer.'" *Id.* Detective Manke ended contact with Mr. Boston at that point.

The State planned to offer Mr. Boston's statements at trial, so a CrR 3.5 hearing was conducted. The court found an implied waiver of *Miranda* rights and that Mr. Boston's statements could be offered in evidence by the State.

Mr. Boston was found guilty by a jury of one count of delivery of a controlled substance, one count of possession with intent to deliver a controlled substance, use of drug paraphernalia, and bail jumping. Mr. Boston's statements to Detective Manke were

3

arguably important to his conviction of the first two counts, given trial evidence that he was involved in only a limited way, if at all, in sales to the confidential informant.

The jury was asked by special verdict whether Mr. Boston's delivery and possession with intent to deliver occurred within 1,000 feet of a school bus stop. Proof of sales in that proximity of a school bus stop may be relied upon to double the term of imprisonment otherwise provided for the crime. RCW 69.50.435(1)(c). The jury answered "yes." CP at 268, 270. The court imposed a sentence of 120 months, which included 48 months for two sentence enhancements based on the special verdict forms. Mr. Boston appeals.

## ANALYSIS

Mr. Boston assigns error to the trial court's (1) finding that his statements to Detective Manke were admissible, (2) instructing the jury it had to be unanimous to answer "no" to the special verdict forms, and (3) imposing school bus stop enhancements when insufficient evidence was presented of the seating capacity of school buses stopping near the Boston/Remington home. Mr. Boston concedes that his second assignment of error fails in light of the Washington Supreme Court's intervening decision in *State v. Guzman Nuñez*, 174 Wn.2d 707, 285 P.3d 21 (2012). We address his first and third assignments of error in turn.

I

When a person is subject to custodial interrogation, any statements made are deemed to be compelled in violation of the Fifth Amendment unless the State can show that before the statements were made there was a knowing, voluntary, and intelligent waiver of the person's Fifth Amendment privilege. *State v. Sargent*, 111 Wn.2d 641, 648, 762 P.2d 1127 (1988). The State must show a waiver of *Miranda* rights by a preponderance of the evidence. *State v. Athan*, 160 Wn.2d 354, 380, 158 P.3d 27 (2007). Statements obtained in violation of the Fifth Amendment must be suppressed. *State v. Warner*, 125 Wn.2d 876, 888, 889 P.2d 479 (1995).

"The waiver inquiry 'has two distinct dimensions': waiver must be 'voluntary in the sense that it was the product of a free and deliberate choice rather than intimidation, coercion, or deception,' and 'made with a full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it.'" *Berghuis v. Thompkins*, 560 U.S. 370, 130 S. Ct. 2250, 2260, 176 L. Ed. 2d 1098 (2010) (quoting *Moran v. Burbine*, 475 U.S. 412, 421, 106 S. Ct. 1135, 89 L. Ed. 2d 410 (1986)).

The following findings and conclusions by the trial court following the CrR 3.5 hearing are relevant to the issues Mr. Boston raises on appeal:

C.    [After serving the search warrant] Detective [Michael] Gilmore brought Mr. Boston into the front room and had him sit on the couch, along with Ms. Remington and Mr. Loster. . . . At 14:11, Detective Ian Ashley read the full *Miranda* warning to the three occupants—off of his rights card. . . . Mr. Boston stated that he understood his rights. He did not

5

respond when asked if having these rights in mind, do you wish to say anything. The detectives did not question any of the three arrestees.

. . . .

E.      Later on May 14, 2010, Detective Brad Manke contacted Mr. Boston in the conference room in the Stevens County Jail. Mr. Boston and the others were at the house for about 20 minutes, and then they were transported some blocks to the Jail, where they were booked. Mr. Boston was then taken into the conference room. . . . Detective Manke had met Mr. Boston on at least three previous occasions—they'd had civil, non-confrontational conversations in the past. . . .

F.      Detective Manke advised Mr. Boston what the charges were and asked Mr. Boston if he wanted to speak to him. . . . Mr. Boston [said] he was getting sick from not having heroin, and needed medical help—my head is not clear. He stated that he wanted to talk to Detective Manke and asked the detective to come back in a day. They talked for five to ten minutes on May 14.

G.      On May 15, Detective Manke returned to the jail and again talked to Mr. Boston in the conference room. Mr. Boston's medical condition was noticeably better . . . Mr. Boston stated, "Let's cut to the chase. What do you want?" Detective Manke answered, "I want to know about your heroin dealings." Detective Manke only answered Mr. Boston's question—Mr. [B]oston asked the first question. Mr. Boston stated, "I'm small time—not big time. I'm just a junkie keeping other junkies well." Mr. Boston then said that his head still wasn't very clear and again asked the detective to come back later. . . . The interview took only a few minutes. Mr. Boston . . . fully understood the reason Detective Manke had returned—Detective Manke had returned at Mr. Boston's request.

H.      Detective Manke returned again on May 16, or May 17. Mr. Boston stated at the outset, "I'd better talk to a lawyer." Detective Manke ended the contact.

CP at 273-75.

From these findings of fact, the trial court concluded that Mr. Boston did not expressly waive his *Miranda* rights, but that he waived them by implication: he was informed of his rights, he understood them, and he then chose to offer information. It

found that the waiver was evident on May 14 and 15, only to be terminated on May 16 or 17. Although the court concluded that the detective's statement "I want to know about your heroin dealings" was interrogation, it concluded that the State had proved by a preponderance of the evidence that Mr. Boston's incriminating statements were voluntary.

Mr. Boston assigns error to the trial court's finding of fact that Detective Manke returned to the jail for the second interview at Mr. Boston's request. He assigns error to the court's conclusions that he waived his *Miranda* rights by implication; that he was informed of his rights, he understood his rights, and then chose to volunteer information. He also assigns error to the court's conclusions that the waiver was evidenced on May 14 and 15, and that Mr. Boston never indicated anything other than a willingness to speak to Detective Manke until May 16 or 17. Br. of Appellant at 5.

In reviewing a trial court's decision that a defendant's statement is admissible, we treat the court's findings of fact entered following the CrR 3.5 hearing as verities on appeal if unchallenged, and, if challenged, treat them as verities if supported by substantial evidence. *State v. Broadaway*, 133 Wn.2d 118, 131, 942 P.2d 363 (1997). A trial court's findings following a CrR 3.5 hearing are supported by substantial evidence if supported by evidence of sufficient quantity that a rational fair-minded person could believe the finding to be true. *State v. Hill*, 123 Wn.2d 641, 644, 870 P.2d 313 (1994). Credibility determinations are the prerogative of the trial court and are not subject to

review. *State v. Camarillo*, 115 Wn.2d 60, 71, 794 P.2d 850 (1990). We review de novo whether the trial court's conclusions of law are properly derived from its findings of fact. *State v. Gasteazoro-Paniagua*, 173 Wn. App. 751, 755, 294 P.3d 857, *petition for review filed*, No. 89036-6 (Wash. July 9, 2013).

We first address Mr. Boston's sole assignment of error to the trial court's findings of fact: his challenge to the finding that Detective Manke returned to the jail on May 15 at Mr. Boston's request.[2] Detective Manke testified at the CrR 3.5 hearing; Mr. Boston did not. The following testimony by the detective was relevant to the trial court's finding:

> Q    ... [Y]ou did tell him you wanted to talk to him, and he said, "Okay, I'll talk to you but not now." Correct?
> A    At some point. I—He did say that.
> Q    Okay. And that was in response to you saying you wanted to talk to him.
> A    Yeah, basically, the—
> Q    Okay.
> A    —"Here's,—here's what you're charged with; I want to get your side of the story" type thing. I don't remember the exact words.
> Q    Okay.
> A    He asked me to come back the next day.

RP at 67-68.

> Q    You'd indicated that the suspect Mr. Boston had asked you to return the next [d]ay. Did you in fact do that?
> A    I did.

---

[2] The finding is included in finding G, not finding H as stated in Mr. Boston's brief. Br. of Appellant at 5. We can and do overlook the error. RAP 1.2(a).

8

*Id.* at 69.

Q    Was there any time during your contact with Mr. Boston that he seemed uncertain about whether he wanted to talk to you?

A    Actually the first two times that I tried to talk to him he told me to come back. So he seemed certain that he wanted me to come back. And then the third time he—told me he wanted to talk to an attorney; so he was certain about that.

*Id.* at 76.

At the CrR 3.5 hearing, Mr. Boston's lawyer argued that Mr. Boston's statement that his head was not clear and to come back the next day was "not an invitation to come back tomorrow, . . . [t]hat's an attempt to delay the conversation that's going on." *Id.* at 91. While that is a possible interpretation of Mr. Boston's statement, the trial court was in the best position to evaluate the evidence of surrounding circumstances and assess the credibility of the detective, and it found a true invitation to return the next day. Detective Manke's testimony is substantial evidence supporting the trial court's finding. Further support for the finding is provided by the trial court's unchallenged finding that the detective and Mr. Boston had met on at least three prior occasions and had had civil, nonconfrontational conversations in the past.

Turning to Mr. Boston's challenges to the trial court's conclusions, the trial court's conclusion that Mr. Boston was informed of his rights is supported by the unchallenged finding that Detective Ashley read *Miranda* warnings to Mr. Boston and the others

9

present at the home in the early afternoon of May 14, at the time the search warrant was being executed.

Mr. Boston nonetheless argues that the initial warnings were not sufficient because he told Detective Manke he did not want to speak on May 14, the detective respected his wishes at that time, and the detective's right to resume questioning was governed by case law holding that questioning can be resumed only "after a 'significant period' of time has passed [and] only if the accused's original request to cut off questioning was 'scrupulously honored' and he is provided with a fresh set of Miranda warnings on requestioning." Br. of Appellant at 12 (quoting *State v. Cornethan*, 38 Wn. App. 231, 233-34, 684 P.2d 1355 (1984)).

*Cornethan* addressed an unambiguous invocation of the right to remain silent, however. The trial court's finding in that case was that the defendant, upon being visited in the hospital by his attorney,

> "*was advised of his constitutional right to remain silent and the defendant determined that he wanted to exercise his right to remain silent*; defense counsel at that time advised Officer Covington of King County Rehabilitative Services who was guarding the defendant that the defendant did not want to talk to police."

38 Wn. App. at 234. An accused who wants to invoke his or her right to remain silent must do so unambiguously. *Berghuis*, 130 S. Ct. at 2260.

Here, the trial court's unchallenged finding that "[Mr. Boston] stated that he wanted to talk to Detective Manke and asked the detective to come back in a day," does

not present an unequivocal invocation of the right to remain silent. *Cf. United States v. Al-Muqsit*, 191 F.3d 928, 936 (8th Cir. 1999) (right to remain silent was not invoked by accused's statements that he "'wasn't ready to talk . . . at that time'" and "'I don't think right now'"), *vacated in part on other grounds on reh'g sub nom. United States v. Logan*, 210 F.3d 820 (8th Cir. 2000); *Commonwealth v. Leahy*, 445 Mass. 481, 483-84, 838 N.E.2d 1220 (2005) ("'Not right now, in a minute. I need to figure some things out,'" not an unequivocal assertion of right to remain silent); *People v. Martinez*, 47 Cal. 4th 911, 945, 224 P.3d 877, 105 Cal. Rptr. 3d 131 (2010) ("'I don't want to talk anymore right now,'" not unequivocal).

Mr. Boston's next challenge is to the trial court's conclusion that Mr. Boston understood his rights. The conclusion is supported by the court's unchallenged finding that Mr. Boston stated he understood his rights and by other unchallenged findings, not reproduced above, that when being read his rights Mr. Boston did not show confusion or fear and did not show any signs of being under the influence of heroin, other controlled substances, or alcohol.

The next conclusion challenged by Mr. Boston is that he impliedly waived his rights. "[A] waiver of *Miranda* rights may be implied through 'the defendant's silence, coupled with an understanding of his rights and a course of conduct indicating waiver.'" *Berghuis*, 130 S. Ct. at 2261 (quoting *North Carolina v. Butler*, 441 U.S. 369, 373, 99 S. Ct. 1755, 60 L. Ed. 2d 286 (1979)); *State v. Terrovona*, 105 Wn.2d 632, 646-47, 716 P.2d

11

295 (1986) (implied waiver may be found where the defendant is informed of his

*Miranda* rights, understands them, and chooses to volunteer information in the absence of

duress, promise, or threat). The "knowing and intelligent" dimension of Mr. Boston's

waiver is supported by the trial court's unchallenged findings that Mr. Boston did not

expressly invoke his right to remain silent after being read *Miranda* warnings, that he

stated he understood his rights, that he stated later that afternoon that he wanted to talk to

Detective Manke and told him to come back in a day, and that he thereafter made a

limited statement. These same unchallenged findings support the court's conclusion that

his waiver was evidenced on May 14 and 15 and that he never indicated anything other

than a willingness to speak to Detective Manke until May 16 or 17.

As to the requirement that his waiver be "voluntary" in the sense of being the

product of choice, Mr. Boston has not challenged any of the trial court's findings that his

statement was not the result of intimidation, coercion, or deception.[3] Those findings are

sufficient to support the voluntary character of the waiver.

---

[3] We would not characterize Mr. Boston as having "chose[n] to *volunteer*
information" in light of the trial court's conclusion (with which we agree) that Detective
Manke's statement on May 14 constituted interrogation. But that conclusion was
unnecessary to the trial court's determination that Mr. Boston's statement was
admissible; it is enough that in responding to interrogation, Mr. Boston had been read his
rights, understood them, impliedly waived them, and provided answers voluntarily.

12

In conclusion, the trial court's findings following the CrR 3.5 hearing are supported by substantial evidence and its conclusions following the hearing were properly derived from its findings. Mr. Boston's statement was properly admitted at trial.

II

Mr. Boston's remaining assignment of error is that insufficient evidence supported the jury's finding by special verdict that Mr. Boston possessed a controlled substance within 1,000 feet of a school bus stop designated by a school district, with the intent to manufacture or deliver the controlled substance. RCW 69.50.435(1)(c) provides increased periods of confinement under such circumstances.

Mr. Boston argues that the trial court's enhancement of his sentence based on the jury finding must be reversed where the court's instructions to the jury defined "school bus," yet the State failed to present any evidence that buses using the bus stop relied upon by the State satisfied the definition.

Question 1 on the special verdicts relied upon for the school bus stop enhancements asked in relevant part whether the State had proved beyond a reasonable doubt that the defendant possessed or delivered a controlled substance "within one thousand feet of a school bus route stop designated by a school district." CP at 268, 270.

The jurors had been given the following instructions to guide them in answering question 1 to the special verdict forms:

13

INSTRUCTION NO. 26

You will also be given a special verdict form for the crimes charged in counts 3 and 5. If you find the defendant not guilty of these crimes or guilty of a lesser offense, do not use the special verdict form. If you find the defendant guilty of these crimes, you will then use the special verdict form and fill in the blanks with the answer "yes" or "no" according to the decision you reach.

The special verdict form for these offenses has two questions. Because this is a criminal question, all twelve of you must agree in order to answer each question.

The first question will ask you to consider the place where the crime occurred. For this question, the State has the burden of proof beyond a reasonable doubt. An earlier instruction defines this burden of proof.

. . . .

INSTRUCTION NO. 27

"School bus" means a vehicle that meets the following requirements: (1) has a seating capacity of more than ten persons including the driver; (2) is regularly used to transport students to and from school or in connection with school activities; and (3) is [owned and operated by any school district] [or] [privately owned and operated under contract or otherwise with any school district] for the transportation of students. The term does not include buses operated by common carriers in the urban transportation of students such as transportation of students through a municipal transportation system.

CP at 254-55 (most alterations in original).

Instruction 27 was based on Washington pattern jury instruction 50.63. *See* 11

WASHINGTON PRACTICE: WASHINGTON PATTERN JURY INSTRUCTIONS: CRIMINAL 50.63, at

1000 (3d ed. 2008). The instruction combines the statutory definition of "school bus" with

a definition contained in administrative regulations published by the superintendent of

public instruction. *Id.*

14

The State does not dispute Mr. Boston's contention that it presented no evidence of the seating capacity of buses using the school bus route stop that it relied upon to prove facts supporting the enhancement. It argues instead that the seating capacity of a school bus is not an "element" of any crime with which Mr. Boston was charged. Because it is only the definition of a term relevant to a sentencing enhancement, the State argues, case law holding that the State assumes the burden of proving otherwise unnecessary elements of an offense when they are included without objection in the to-convict instructions should not apply. *See, e.g., State v. Lee*, 128 Wn.2d 151, 159, 904 P.2d 1143 (1995). Such cases provide that if insufficient evidence is introduced at trial to prove the added element, reversal is required. *Id.* at 164. Retrial following reversal for insufficient evidence is "unequivocally prohibited" and dismissal is the remedy. *State v. Hardesty*, 129 Wn.2d 303, 309, 915 P.2d 1080 (1996).

The law of the case doctrine is not limited in its application to elements instructions, however. It provides more generally (and has, since 1896) that "whether the instruction in question was rightfully or wrongfully given, it was binding and conclusive upon the jury, and constitutes upon this hearing the law of the case." *Pepperall v. City Park Transit Co.*, 15 Wash. 176, 180, 45 P. 743, 46 P. 407 (1896), *overruled in part on other grounds by Thornton v. Dow*, 60 Wn.2d 622, 111 P. 899 (1910). It extends to definition instructions. *See Scoccolo Constr., Inc. v. City of Renton*, 158 Wn.2d 506, 522-23, 145 P.3d 371 (2006) (Madsen, J., concurring) (narrow and debatable definition

15

of "acting for" accepted in instructions was law of the case); *Englehart v. Gen. Elec. Co.*, 11 Wn. App. 922, 923, 527 P.2d 685 (1974) (definition of accidental death was law of the case, no error having been assigned).

The jury was instructed that a "school bus" as used in the instructions must have a seating capacity of more than 10 persons including the driver. Instruction 27 was the only substantive instruction given to the jury to guide its determination whether the State met its burden of proof, beyond a reasonable doubt, that Mr. Boston possessed a controlled substance within the required proximity of a designated "school bus" stop. The State raised no objection to the instruction, which thereby became the law of the case. No evidence was presented regarding the seating capacity of buses stopping within 1,000 feet of the Boston/Remington home. Reversal of the school bus stop enhancements is required.

We reverse the school bus stop enhancements. We otherwise affirm. We remand for resentencing on Mr. Boston's convictions for delivery of a controlled substance and possession with intent to manufacture or deliver a controlled substance in light of reversal of the enhancements.

A majority of the panel has determined that this opinion will not be printed in the

16

No. 29658-0-III
*State v. Boston*

Washington Appellate Reports but it will be filed for public record pursuant to RCW

2.06.040.

_____
Siddoway, A.C.J.

WE CONCUR:

_____
Brown, J.

_____
Kulik, J.