Robert G. **BLAKE**, Appellant,

v.

**STATE of Alaska**, Appellee.

No. A–2415.

Court of Appeals of Alaska.

Oct. 21, 1988.

---

**512**

Robert G. Blake, Superior, Mont., pro se.

Kenneth S. Roosa, Asst. Dist. Atty., Harry L. Davis, Dist. Atty., Fairbanks, and Grace Berg Schaible, Atty. Gen., Juneau, for appellee.

Before BRYNER, C.J., and COATS and SINGLETON, JJ.

## OPINION

SINGLETON, Judge.

Robert G. Blake was convicted by a jury of taking a sow grizzly bear accompanied by cubs in violation of former 5 Alaska Administrative Code (AAC) 81.320(2); taking a grizzly bear in a closed season, former 5 AAC 81.320(2); taking an overlimit grizzly, former 5 AAC 81.320(2); taking game in a closed area, AS 16.05.789(a); and misconduct involving weapons in the second degree, AS 11.61.210(a)(1). For misconduct involving weapons, Blake was sentenced to thirty days with twenty days suspended, and fined $2,000 with $1,000 suspended. For each of the other four charges, he received identical sentences of four months with all but thirty days suspended and an unsuspended $1,000 fine. These sentences were to run concurrent to each other, but consecutive to the misconduct involving weapons sentence. Blake was ordered to donate the value of his weapon, $350, to the Wildlife Safeguard Fund. Blake's hunting license was revoked for three years, and he was placed on probation for five years. Blake therefore received a composite sentence of five months with all but sixty days suspended and a fine of $3,350 with $1,000 suspended. Blake appealed his sentence. We affirmed

in part but remanded the case to the trial court in order to permit a hearing on Blake's claim that certain statements were admitted against him in violation of his rights under *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). *Blake v. State,* Memorandum Opinion and Judgment No. 1509 (Alaska App.1987). Specifically, we asked the trial court to determine: (1) whether Blake was in "custody" at the time he made incriminating statements and, if so, (2) whether he made statements in response to an "interrogation." On remand, the court did not reach the second determination because it concluded that Blake was not in custody when he made the incriminating statements. Blake appeals. We affirm.

## FACTS

On June 4, 1985, Blake was employed by the State of Alaska, Department of Transportation, at the Chandalar Road Maintenance Station on the Dalton Highway in Alaska. Blake, in the company of several others, was drinking beer and R & R Scotch on the wooden deck of the station. As the evening wore on, members of the party began target shooting at beer cans. Blake, using a 7mm magnum rifle joined them. He saw a grizzly bear on the mountain side near a rock he had been using as a target. Blake shot the bear. The shooting took place within the five-mile quarter along the Dalton Highway above the Yukon River, where hunting with firearms is prohibited. After the shooting subsided, Blake was found on the mountainside by members of his party. Blake had passed out from intoxication as he climbed towards the bear.

The shooting was reported to the Fish and Wildlife Protection (FWP) office. FWP Officer Don Wilson began investigating the incident. On June 10, 1985, FWP Officers Merrill and Schied stopped Blake at mile post 28 of the Elliott Highway. There is a dispute about the events which occurred from this point. Merrill testified in court that Blake told him that he knew he was being stopped and questioned about the bear. Merrill stated that Blake con-

sented to a search of his truck. Merrill said he did not place Blake under arrest or restrain him in any way. Merrill also testified that Blake voluntarily gave him a statement without coercion. During the trial, Blake elicited on cross-examination that Merrill had not advised him of his *Miranda* rights during the conversation. Merrill admitted that he might have told Blake during the conversation that he, Merrill, had received written statements from other people about Blake's shooting of the bear. Merrill also testified that when he stopped Blake, he might have told him that he should write out a statement giving his version of the events.

At the calendar call, just prior to trial, Blake moved orally to suppress all evidence obtained as a result of this stop because he had not been given his *Miranda* warnings. The court denied the motion. In determining the significance of the failure to give *Miranda* warnings, the court initially focused on whether Blake was under arrest rather than whether he was in "custody." *See Hunter v. State*, 590 P.2d 888, 892–98 (Alaska 1979). On remand, the trial court entered written findings of fact and conclusions of law. Specifically, the court found:

(1). Defendant was not in custody at the time he made his initial statements to Officers Merrill and Schied at 28 mile Elliott Highway. The court bases this conclusion upon the following:

(a) The defendant stopped his vehicle voluntarily, simply on a wave from Officer Merrill. There was no chase and no emergency lights were activated.

(b) The meeting between Officer Merrill [and Blake] lasted a short time.

(c) Only two officers were present.

(d) The only questions asked by the officers were whether [the] defendant knew why he had been contacted and whether he would sign a consent to search, which he did.

(e) Defendant arrived at and left the place of questioning in his own vehicle.

(f) Defendant was permitted to leave in his own vehicle and complete a written statement at home.

## DISCUSSION

◼ In *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), the Supreme Court held that the prosecution may not use statements, whether exculpatory or inculpatory, stemming from custodial interrogation of a defendant unless it demonstrates the use of certain procedural safeguards prior to questioning. *Id.* at 444, 86 S.Ct. at 1612. By custodial interrogation, the Supreme Court meant "questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way." *Id.*

In a separate line of cases, the Alaska courts and the federal courts have considered the fourth amendment to the United States Constitution and the comparable provisions of our state constitution which prohibit unreasonable searches and seizures, and have applied those provisions to traffic stops and other investigatory stops. *See, e.g. United States v. Cortez*, 449 U.S. 411, 101 S.Ct. 690, 66 L.Ed.2d 621 (1981); *Delaware v. Prouse*, 440 U.S. 648, 99 S.Ct. 1391, 59 L.Ed.2d 660 (1979); *Ebona v. State*, 577 P.2d 698 (Alaska 1978); *Coleman v. State*, 553 P.2d 40 (Alaska 1976); *State v. Moran*, 667 P.2d 734 (Alaska App. 1983). The Alaska courts have held that a person may not be temporarily seized in the absence of a "reasonable suspicion that imminent public danger exists or serious harm to persons or property has recently occurred." *See Coleman*, 553 P.2d at 46; *Moran*, 667 P.2d at 735.

The Alaska Supreme Court has also separately analyzed the questions of when a person is in custody for purposes of *Miranda* warnings, and when a person is seized for purposes of the fourth amendment. *See, e.g., Hunter*, 590 P.2d at 895 (establishing standards governing the determination of when a person is in custody for *Miranda* purposes); *Waring v. State*, 670 P.2d 357, 364–67 (Alaska 1983) (establishing standards for determining when there has been a seizure under article I, section 14, of the Alaska Constitution); *Henry v. State*, 621 P.2d 1, 2–3 (Alaska 1980) (establishing standards for determin-

ing when a person has been seized for purposes of the fourth amendment). In *Waring,* the Alaska Supreme Court followed *United States v. Mendenhall,* 446 U.S. 544, 100 S.Ct. 1870, 64 L.Ed.2d 497 (1980), and concluded that a person has been seized within the meaning of the fourth amendment if, in light of all the circumstances, a reasonable person would have believed that he or she was not free to leave. *Waring,* 670 P.2d at 364. Similarly, the Alaska Supreme Court has also held that a person is in custody for purposes of *Miranda* when there is "some actual indication of custody, such that a reasonable person would feel he was not free to leave and break off police questioning." *Hunter,* 590 P.2d at 895.

▮ In this case, Blake was proceeding along the highway when he was flagged down by two wildlife protection officers. The trial court found that Blake was not in custody and was not under arrest. It is possible that Judge Zimmerman did not distinguish between custody for *Miranda* purposes and a seizure for fourth amendment purposes in reaching that conclusion. It is also possible that a finding that Blake was not seized for fourth amendment purposes would not be clearly erroneous, if in fact, Blake felt no compulsion to respond to the officer's actions. Having reviewed the authorities, we have determined that a person who is in custody for fourth amendment purposes, *i.e.,* a person who has been "seized," is not necessarily entitled to *"Miranda* warnings." We will therefore assume that under the circumstances, Blake was "seized" for purposes of the fourth amendment. Such an assumption avoids very difficult factual determinations. As the United States Supreme Court has pointed out:

> Certainly, few motorists would feel free either to disobey a directive to pull over or to leave the scene of a traffic stop without being told they might do so. Partly for these reasons, we have long acknowledged that "stopping an automobile and detaining its occupants constitutes a 'seizure' within the meaning of the fourth amendment, even though the purpose of the stop is limited and the

resulting detention quite brief." (Citations omitted.)

*Berkemer v. McCarty,* 468 U.S. 420, 436–37, 104 S.Ct. 3138, 3148–3149, 82 L.Ed.2d 317 (1984).

If, as a comparison of *Hunter* and *Waring* would indicate, the tests for custodial interrogation and fourth amendment seizure were the same, it necessarily would follow that Blake was subjected to custodial interrogation and entitled to *Miranda* warnings. However, neither the United States Supreme Court nor the Alaska Supreme Court has been willing to go so far. In *Berkemer,* the United States Supreme Court held that a person subjected to a traffic stop, and by extension an investigatory stop, was not necessarily entitled to *Miranda* warnings. *Berkemer,* 468 U.S. at 442–43, 104 S.Ct. at 3151–52. The Court said:

> However, [despite the similarity between custodial interrogation and a fourth amendment seizure] we decline to accord talismanic power to the phrase in the *Miranda* opinion emphasized by respondent. ["A person is entitled to *Miranda* warnings when taken into custody or otherwise deprived of his freedom of action in any significant way."] Fidelity to the doctrine announced in *Miranda* requires that it be enforced strictly, but only in those types of situations in which the concerns that powered the decision are implicated. Thus, we must decide whether a traffic stop exerts upon a detained person pressures that sufficiently impair his free exercise of his privilege against self-incrimination to require that he be warned of his constitutional rights.

*Id.* at 437, 104 S.Ct. at 3148–3149. The Court based a negative answer to this question on two considerations. First, traffic and investigatory stops are presumably temporary and brief and thus, do not impose the same coercive pressure on a defendant to speak that interrogation at a police station would impose. Second, traffic and investigatory stops take place in public and thus, the defendant is not isolated from friends, associates, etc., as he or she would be in a "police dominated" atmo-

sphere. *Id.* at 437–39, 104 S.Ct. at 3148–3150.

While recognizing the similarities between the test for "seizure" and "custodial interrogation," the Alaska Supreme Court has also refused to hold that every fourth amendment seizure triggers a right to *Miranda* warnings. *Waring,* 670 P.2d at 366 n. 19. *See also Palmer v. State,* 604 P.2d 1106, 1111–13 (Alaska 1979) (Rabinowitz, J., concurring) (concluding that a traffic stop falls within the on-the-scene questioning exception to *Miranda* ).

We believe that the analysis in *Berkemer* should apply equally under the Alaska Constitution. *See LeMense v. State,* 754 P.2d 268, 274 (Alaska App.1988). We therefore conclude that an investigatory stop for purposes of the fourth amendment does not necessarily trigger a right to *Miranda* warnings. In reaching this conclusion, however, it is important to stress a limitation suggested in *Berkemer.* If a motorist is detained under circumstances substantially more coercive than the typical traffic stop, and that coercion actually impairs the free exercise of the privilege against self-incrimination, *Miranda* warnings would be required. *Berkemer,* 468 U.S. at 440, 104 S.Ct. at 3150.

Applying this test to Blake's situation, we conclude that he was not subjected to "custodial interrogation." In reaching this conclusion, we accept as valid the trial court's factual findings that the stop was brief, was not unduly coercive, and that Blake was free to leave after the search of his vehicle.

The judgment of the district court is AFFIRMED.