**Cody Otis McCOLLUM, Appellant,**

v.

**STATE of Alaska, Appellee.**

No. 1115.

Court of Appeals of Alaska.

March 15, 1991.

Robert Merle Cowan, Cowan & Gerry, Kenai, for appellant.

Joseph N. Levesque, Asst. Dist. Atty., James L. Hanley, Dist. Atty., Kenai, and Douglas B. Baily, Atty. Gen., Juneau, for appellee.

Before BRYNER, C.J., and COATS and MANNHEIMER, JJ.

## OPINION

BRYNER, Chief Judge.

Magistrate Lynn H. Christensen convicted Cody Otis McCollum of negligent driving. AS 28.35.045. McCollum appeals the denial of his motion to suppress. We affirm.

At the evidentiary hearing on the motion to suppress, McCollum testified that on December 20, 1989, at approximately 10:00 p.m., Alaska State Trooper Adams stopped him in the Safeway store parking lot in Soldotna in order to question him about his involvement in damaging shopping carts in the lot with his pickup truck. McCollum had been in the parking lot earlier, but decided to return to confront the manager of the Safeway store who he noticed had been following him. After stopping McCollum, Adams asked him for his driver's license and registration. Adams then requested that McCollum sit in the patrol car where he questioned him for five to ten minutes. At one point during the questioning, Adams left for a couple of minutes and instructed McCollum to "stay put."

Soldotna Police Officer Michael Leonard Rose also testified at the evidentiary hearing. Rose stated that he received a call from dispatch at approximately 10:00 p.m. regarding a pickup truck that had driven over shopping carts in the Safeway store parking lot. Adams was present at the scene when Rose arrived. Adams gave McCollum's driver's license to Rose. Rose then asked McCollum to sit in his patrol car where he questioned him about the damaged shopping carts for fifteen minutes. According to Rose, he questioned McCol-

lum in the patrol car because it was cold outside. During the questioning, McCollum admitted to Rose that he ran over the carts with his truck and damaged them. Rose stated that he did not advise McCollum of his *Miranda*[1] rights because "I didn't feel I had Mr. McCollum in custody. I hadn't arrested him. I didn't intend to arrest him." However, McCollum testified that he did not feel free to leave while speaking with the officers.

After the questioning, Rose issued McCollum a citation for negligent driving and advised him that he would forward a report to the juvenile authorities for investigation into criminal mischief charges. Rose then questioned McCollum's passenger in the patrol car for approximately five minutes. McCollum and his passenger were then released and permitted to leave.

On appeal, McCollum contends that the statements he made to Rose were inadmissible because he made them in a custodial setting and Rose failed to read him his *Miranda* warnings.

The Alaska Supreme Court has held that a person is in custody for purposes of *Miranda* when there is "some actual indication of custody, such that a reasonable person would feel he was not free to leave and break off police questioning." *Hunter v. State*, 590 P.2d 888, 895 (Alaska 1979).

In a separate line of cases, the Alaska Supreme Court has also discussed fourth amendment seizures in the context of investigatory stops, including traffic stops. According to the court, a person has been seized within the meaning of the fourth amendment if, in light of all the circumstances, a reasonable person would feel restrained and no longer free to leave. *Waring v. State*, 670 P.2d 357, 364 (Alaska 1983).

Despite the similarities between the tests for custodial interrogation and fourth amendment seizure, both the United States Supreme Court and the Alaska Supreme Court have been reluctant to hold that a person subjected to a traffic stop is necessarily entitled to *Miranda* warnings. *Ber-*

*kemer v. McCarty*, 468 U.S. 420, 440, 104 S.Ct. 3138, 3150, 82 L.Ed.2d 317 (1984); *Waring*, 670 P.2d at 366 n. 19; *Blake v. State*, 763 P.2d 511, 514 (Alaska App.1988). *See also Palmer v. State*, 604 P.2d 1106, 1112 (Alaska 1979) (Rabinowitz, J., concurring) (on-the-scene questioning which occurs during a traffic stop constitutes an exception to the *Miranda* warning requirement).

In *Berkemer*, the United States Supreme Court noted two reasons for this conclusion. First, traffic stops are "presumptively temporary and brief" and thus do not impose the same coercive pressures on a detained subject's right to speak as an interrogation at a police station would impose. Second, traffic stops take place in public rather than a "police dominated" atmosphere, thus reducing the ability of an unscrupulous police officer to use illegitimate means to elicit incriminating statements. *Berkemer*, 468 U.S. at 438–39, 104 S.Ct. at 3149–50. However, where a motorist is detained "under circumstances substantially more coercive than the typical traffic stop, and that coercion actually impairs the free exercise of the privilege against self-incrimination," *Miranda* warnings are required. *Blake*, 763 P.2d at 515.

■ Applying these principles, we conclude that the trial court was not clearly erroneous in finding that McCollum was not subjected to custodial interrogation. There is substantial evidence in the record to support a finding that McCollum was not stopped "under circumstances substantially more coercive than the typical traffic stop." McCollum acknowledged that he returned to the scene voluntarily. The police detained McCollum at the scene for a relatively brief period. Although McCollum sat in patrol cars while talking to the police, he was never physically restrained or threatened with restraint, and he was allowed to leave the scene after being cited for negligent driving.

■ McCollum nevertheless contends that *Berkemer* applies exclusively to traffic stops for motor vehicle violations. He

---

1. *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

notes that the stop in this case was to investigate a complaint that McCollum had damaged shopping carts with his car and that, in addition to being cited for negligent driving, he was also charged as a juvenile with malicious mischief. McCollum argues that, for these reasons, *Berkemer* is inapplicable.

We disagree. The pertinent issue, in our .view is not the focus of the stop *per se,* but whether the circumstances surrounding the stop, in their totality, were substantially more coercive than those of a typical traffic stop. We have previously applied *Berkemer* to traffic stops made for purposes of investigating potential offenses other than traffic violations. *See, e.g., Blake,* 763 P.2d at 514 (finding no *Miranda* custody when police stopped a motorist for questioning about the unlawful taking of a bear). *See also Hintz v. State,* 627 P.2d 207, 209 (Alaska 1981) (no *Miranda* custody created by "investigative detention" of motorist for approximately ten minutes to investigate suspicious circumstances involving the car being driven). While the stop in McCollum's case may have exceeded the minimal period of restraint necessary to issue a citation for a traffic violation, the trial court could properly find that the totality of the circumstances appeared similar to, and no more coercive than, typical on-scene investigations of minor traffic accidents.

The conviction is AFFIRMED.