Dewell Wayne PEARCE, Appellant,

v.

STATE of Alaska, Appellee.

No. A–7445.

Court of Appeals of Alaska.

April 19, 2002.

**680**

J. Randall Luffberry, Palmer, for Appellant.

Douglas H. Kossler, Assistant Attorney General, Office of Special Prosecutions and Appeals, Anchorage, and Bruce M. Botelho, Attorney General, Juneau, for Appellee.

Before: COATS, Chief Judge, and MANNHEIMER and STEWART, Judges.

*OPINION*

MANNHEIMER, Judge.

In the summer of 1994, Dewell Wayne Pearce tried to abduct a young woman at gunpoint. He was subsequently convicted of attempted kidnapping, third-degree assault, and third-degree weapons misconduct (felon in possession of a concealable firearm).[1]

In this appeal, Pearce argues that the superior court should have suppressed one piece of the State's evidence: an apparent suicide note, handwritten by Pearce, that was discovered on his boat during the execution of a search warrant. The warrant authorized the police to search for a handgun and hol-

ster, ammunition, and possible photographs of the handgun. Pearce points out that the handwritten note did not fall within any of these categories, and he therefore argues that the officer who found the note violated Pearce's privacy rights when he read the note (and, after reading it, seized it).

We reject Pearce's argument because the trial judge found that Pearce had no subjective expectation of privacy in the note, and that finding is not clearly erroneous.

*Underlying facts*

On July 21, 1994, a young woman, L.W., was rollerblading alongside the Richardson Highway between Valdez and Glennallen. A faded red Chevrolet pickup truck passed her, then turned around and passed her again. On this second pass, the driver—Pearce—asked L.W. how far she intended to skate. Pearce proceeded down the highway, then turned around and passed L.W. a third time. Finally, Pearce turned around and passed L.W. a fourth time. This fourth time, Pearce stopped his truck in front of L.W., pointed a long-barreled revolver at her, and ordered her to get into the truck; Pearce threatened to kill L.W. if she did not comply. L.W. stalled for time. When she saw another vehicle approaching, she skated toward it. Pearce fled while L.W. was flagging down this other car.

Having reached safety, L.W. immediately wrote down the portion of the red truck's license plate number that she remembered: "4 6 7 3". Using this partial number and L.W.'s description of the truck, the police located Pearce's truck later that evening in a subdivision outside Valdez. However, the police did not find Pearce, for he had left on an overnight fishing trip. Pearce was arrested on his boat after he returned the next day.

L.W. identified Pearce's truck as the truck that had followed her on the highway. She also positively identified Pearce from a photographic line-up.

---

1. AS 11.41.300(a)(1)(C), AS 11.41.220(a)(1), and AS 11.61.200(a)(1), respectively.

*The discovery of the apparent suicide note*

As part of the investigation of this case, the superior court issued a search warrant for Pearce's boat. This warrant authorized the police to search for the revolver and holster, ammunition for the revolver, and any photographs depicting the revolver.

While searching for these items, Trooper Burke Waldron examined a duffel bag that was resting on a dinette table in the boat. When he picked up the duffel bag, he saw a handwritten note lying face-up on the table, underneath where the duffel had been resting. This note consisted of one 8½-by 11–inch sheet of paper, filled with handwriting large enough to cover the whole page. The note read:

Dearest Mom, Dad, & Granny,

I Love you with all my heart. Please forgive me for taking my own life, but I just had too. I Hope to see you in Heaven. Tell the family that my last thoughts were of you. My Heart goes out to you.

Love Wayne

[xxx-xxx-xxxx] [2]
My Folks
Please Call them

Waldron read the note and concluded that Pearce's apparent suicide threat was relevant to the criminal investigation. He therefore seized the note.

*The litigation of Pearce's motion to suppress the note*

Before trial, Pearce asked the superior court to suppress the handwritten note, arguing that Waldron's seizure of the note was not authorized by the warrant. The State responded that the note was found in plain view and that its potential importance (as an indication of Pearce's guilty conscience) was evident from a cursory reading.

Superior Court Judge *pro tempore* Joel H. Bolger held a hearing on Pearce's motion. Only one witness testified at this hearing: Trooper Waldron. He described his discovery of the note and his decision to seize it after he read it.

Pearce's attorney did not actively dispute Waldron's version of events, but he argued strenuously that Waldron exceeded his authority under the warrant when he read the handwritten note. The defense attorney pointed out that Waldron could immediately see that this handwritten note was neither a handgun, a holster, ammunition, or a photograph (*i.e.*, that the note was not among the items listed in the search warrant). The defense attorney argued that, under the "plain view" exception to the warrant requirement, the State must prove that the relevance of the unlisted item was "immediately apparent" to the police. Pearce's attorney contended that the relevance of the handwritten note was not *immediately* apparent because, as Waldron conceded on the stand, it took him about five seconds to read the note and realize that it spoke of suicide. According to the defense attorney, Waldron's act of reading the note constituted an additional and warrantless intrusion into Pearce's privacy.

After hearing Waldron's testimony (and after examining the note), Judge Bolger denied Pearce's motion on several grounds.

Judge Bolger concluded that Pearce had no subjective expectation of privacy in the note. The judge pointed out that the note was found lying face-up on a table in Pearce's boat. Additionally, even though the main portion of the note was addressed to members of Pearce's family, the closing notation—*i.e.*, the telephone number and the request, "My Family; Please Call them"—was clearly addressed to whoever happened to find the note. From this, Judge Bolger concluded that Pearce left the note on the boat, hoping and expecting that it would be discovered and read by one or more third persons.

This finding was sufficient, by itself, to justify Judge Bolger's denial of Pearce's suppression motion. However, Judge Bolger also concluded that the handwritten note was seizable under the "plain view" exception to the warrant requirement. The judge pointed out that Waldron was executing a search warrant on Pearce's boat, and the judge

---

2. In the original note, this bracketed material is a telephone number. We have masked the digits of this telephone number to preserve the privacy of Pearce's family.

found that it was reasonable for Waldron to examine the duffel bag as a potential place for finding the items listed in the warrant. Pearce's handwritten note was revealed when Waldron lifted the duffel bag from the table; thus, it lawfully came into Waldron's view. Finally, Judge Bolger ruled that Waldron's act of reading the note was not an additional "search" for Fourth Amendment purposes.

*The evidence supports Judge Bolger's finding that Pearce had no subjective expectation of privacy in the handwritten note*

■ Before a person can complain of a search or seizure conducted by the government, the person must establish that they had a protected privacy interest in whatever was searched or seized. The test for assessing whether a person has a protected privacy interest (for search and seizure purposes) was first enunciated by Justice John Harlan in his concurring opinion in *Katz v. United States:*

> [T]here is a twofold requirement, first[,] that a person have exhibited an actual (subjective) expectation of privacy and, second, that the expectation be one that society is prepared to recognize as "reasonable."

*Katz v. United States,* 389 U.S. 347, 361, 88 S.Ct. 507, 516, 19 L.Ed.2d 576, 588 (1967).

In *Smith v. State,* 510 P.2d 793, 797 (Alaska 1973), the Alaska Supreme Court adopted this test as the appropriate standard for determining what constitutes a protected privacy interest under the Alaska Constitution. Thus, Pearce's rights under both the federal and the state constitutions hinge on whether (1) he subjectively expected the handwritten note to remain private, and (2) if so, whether that expectation was reasonable.

Typically, litigation in this area commences with the assumption or the unrebutted proof that the defendant had a subjective expectation of privacy in the item searched or seized; the disputed question is whether the defendant's expectation of privacy was reasonable. Pearce's case is different. Here, Judge Bol-

ger found that Pearce did not expect the handwritten note to remain private.

■ If this finding is upheld, then Pearce loses this appeal—regardless of whether the note was independently seizable under the plain view exception to the warrant requirement. The search or seizure of an object, even from a defendant's house or boat, does not violate the defendant's Fourth Amendment rights if the defendant can not demonstrate a protected privacy interest in that object. As the United States Supreme Court said in *Katz,*

> [T]he Fourth Amendment protects people, not places. What a person knowingly exposes to the public, even in his own home or office, is not a subject of Fourth Amendment protection.

389 U.S. at 351, 88 S.Ct. at 511, 19 L.Ed.2d at 582. Thus, if Pearce lacked a subjective expectation of privacy in the handwritten note, the trooper's act of reading and seizing the note did not violate Pearce's Fourth Amendment rights.

■ As noted above, the defendant's subjective expectation of privacy is typically not disputed, and so this court is most often asked to determine whether a subjective expectation of privacy was reasonable. This is a question of law which we decide *de novo*. But whether a defendant indeed had a subjective expectation of privacy is a question of fact. Because this is a question of fact, we defer to the trial judge's finding. In *Dye v. State,* 650 P.2d 418, 420 n. 5 (Alaska App. 1982), we held that a trial judge's finding on this issue will be affirmed on appeal unless the finding is clearly erroneous. Federal courts follow the same rule.[3]

On appeal, Pearce acknowledges that Judge Bolger found that he had no subjective expectation of privacy with respect to the handwritten note, but Pearce argues that Judge Bolger's finding was "really only a guess" and that the judge's conclusion is not supported by the evidence. We disagree.

Although the main portion of the note is a letter to Pearce's relatives, the last portion of

**3.** *See United States v. Hayes,* 120 F.3d 739, 743 (8th Cir.1997); *United States v. Garzon,* 119 F.3d 1446, 1449 (10th Cir.1997); *United States v. Tay-* *lor,* 90 F.3d 903, 908 (4th Cir.1996); *United States v. Blanco,* 844 F.2d 344, 349 (6th Cir. 1988).

the note is addressed to an unknown audience—indicating that Pearce did not expect his family to be the first readers of the note. As Judge Bolger pointed out, Pearce's concluding notation—his plea that the reader(s) of the note call his family—is strong evidence that Pearce expected and hoped that other people would find the note, read it, and forward his message. The fact that Pearce placed the note on the table of his boat, rather than mailing it to his family or taking other steps to hide it from the eyes of strangers, corroborates Judge Bolger's conclusion that Pearce wanted the note to be found and read by third parties.

Pearce presents an alternative argument in which he likens his note to a will. That is, Pearce argues that even if Judge Bolger could reasonably conclude that he expected other people to read his note, he did not intend for the note to be read until after he was dead, and thus he still had a subjective expectation of privacy in the note while he lived.

This is an intriguing argument, but again we must uphold Judge Bolger's finding unless it is shown to be clearly erroneous. Pearce's argument fails because it rests on viewing the facts in the light most favorable to Pearce.

First, Pearce's argument is premised on the assumption that the handwritten note reflected Pearce's honest intention to kill himself. No evidence was offered on this point at the pre-trial hearing, and this conclusion is not self-evident. People who are being investigated for serious crimes have been known to stage an apparent suicide in an attempt to deceive the authorities into abandoning the investigation. For example, in *Sharp v. State*, 837 P.2d 718 (Alaska App. 1992), a defendant accused of sexually abusing several minors fled Alaska after manufacturing an apparent suicide in Turnagain Arm.[4] (Sharp enlisted his parents as accomplices in this endeavor: *see Jean and Homer Sharp v. State*, Alaska App. Memorandum Opinion No. 2370 (March 11, 1992)).

The evidence presented at Pearce's pretrial hearing was consistent with the possibility that Pearce's note was part of a similar plan—a scheme in which Pearce would disappear and his note would lead the authorities to conclude that he had committed suicide in the ocean. If this was Pearce's intention when he penned the note, then he obviously intended people to read the note well before his death.

Alternatively, Pearce's note might have been a cry for help—not a reflection of a true intent to kill himself, but rather a way of getting people to notice his distress. But a cry for help works only if other people hear the cry. Thus, this alternate interpretation of the note also supports Judge Bolger's conclusion that Pearce wanted people to read the note and, thus, that he had no subjective expectation of privacy.

But even if Pearce's note reflected an honest intention to kill himself, Judge Bolger's finding that Pearce had no subjective expectation of privacy in the note is still supported by the evidence. Taking the words of the note at face value, Pearce intended to kill himself and he wanted his family to know that he still loved them. It is possible that, after Pearce left the note in his boat, his plan to kill himself was delayed or he ultimately repented the idea of suicide. Nevertheless, the evidence still supports the inference that Pearce wrote the note and then purposefully left it where other people would find it and read it. There was no evidence that he ever took steps to retrieve the note and re-assert his privacy interests.

At trial, Pearce offered a different explanation of the note. Pearce testified that he wrote the note several months earlier, when he was feeling despondent over the breakdown of his marriage. But Pearce did not offer this testimony to Judge Bolger at the pre-trial hearing, nor did Pearce ask Judge Bolger to re-open the suppression issue after he offered this alternative explanation at trial. Moreover, we are obliged to view the evidence in the light most favorable to Judge Bolger's ruling, not the light that best undermines it.[5]

---

4. *See id.* at 720.

5. *See Schaffer v. State*, 988 P.2d 610, 612 (Alaska App.1999).

In conclusion, the evidence amply supports Judge Bolger's finding that Pearce lacked a subjective expectation of privacy in the handwritten note that Trooper Waldron found on the boat. We therefore uphold the judge's finding. And because Pearce had no subjective expectation of privacy, we conclude that Waldron's reading and seizure of this note did not violate Pearce's Fourth Amendment rights.

Given our disposition of this issue, we need not reach these other issues briefed by the parties: (1) Pearce's assertion that Waldron picked up the note from the table to bring it within comfortable reading distance and, by doing so, exceeded the limits of "plain view" (an issue that was, in any case, not preserved); (2) Pearce's assertion that Waldron's act of reading the note (as opposed to merely observing it) exceeded the limits of "plain view"; and (3) the State's assertion that even if Waldron violated Pearce's Fourth Amendment rights by reading the note, any error was harmless beyond a reasonable doubt, given the minor role that this evidence played at Pearce's trial.

*Conclusion*

The judgement of the superior court is AFFIRMED.