Scott R. CLARK, Appellant,

v.

MUNICIPALITY OF ANCHORAGE, Appellee.

No. A–8674.

Court of Appeals of Alaska.

May 13, 2005.

Michael B. Logue, Gorton & Logue, Anchorage, for Appellant.

John E. McConnaughy III, Assistant Municipal Prosecutor, and Frederick H. Boness, Municipal Attorney, Anchorage, for Appellee.

Before: COATS, Chief Judge, and MANNHEIMER and STEWART, Judges.

*OPINION*

STEWART, Judge.

Scott R. Clark was convicted of operating a motor vehicle without a current liability

insurance policy in violation of Anchorage Municipal Code (AMC) 09.28.030. That ordinance provides that an owner or operator of a motor vehicle must have "a current motor vehicle liability policy, or other security that complies with Alaska Statutes Title 28, when operating the vehicle within the municipality."

Clark raises several constitutional arguments relating to his conviction. Clark claims that the district court should have suppressed his admission that he had no insurance because he was not given *Miranda* warnings.[1] Clark also contends that the district court should have excluded his admission because the prosecution had not independently shown the *corpus delicti* of the offense. Finally, Clark claims that there was insufficient evidence to support his conviction for operating a motor vehicle without a current liability insurance policy. For the reasons explained below, we reject Clark's claims and affirm his conviction.

*Facts and proceedings*

On February 19, 2003, Anchorage Police Officers Genevieve M. Haskins and Pablo Jose Paiz stopped a vehicle because the registration on its rear license plate had expired and because the vehicle had a broken taillight. Clark was the driver. Haskins asked Clark for his driver's license, vehicle registration, and proof of insurance. Clark provided his driver's license and his vehicle registration, but did not provide proof of insurance. Clark told Haskins that he did not have insurance. Haskins cited Clark for violating AMC 09.28.030.

Clark moved to dismiss the case, or alternatively, to suppress statements he had made concerning the status of his insurance on the ground that the stop was illegal. Clark also claimed that because the officer's request for his driver's license, registration, and proof of insurance amounted to custodial questioning, his rights to remain silent and to contact an attorney were violated.

District Court Judge James N. Wanamaker held an evidentiary hearing. After Officer

1. *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

Paiz testified, Clark withdrew his claim that the stop was illegal. However, Clark still argued that his admission that he had no insurance should be suppressed. Rather than arguing that Clark's admission was the product of custodial questioning, Clark's attorney argued that suppression was required because the ordinance "basically forces my client to implicate himself in a crime, violating his right to remain silent, and his right against self-incrimination."

Judge Wanamaker found that the traffic stop was "ordinary," and ruled that *Miranda* warnings were not required. He denied Clark's motion to dismiss the case or to suppress his statement that he had no insurance. Judge Wanamaker did not explicitly discuss Clark's claim that he was forced to implicate himself in violation of his right against self-incrimination.

At trial, Clark objected on *corpus delicti* grounds to the introduction of his statement that he had no insurance. District Court Judge Stephanie Rhoades overruled this objection, finding that there was sufficient corroborating evidence supporting the introduction of Clark's statement.

The jury convicted Clark of operating a vehicle without insurance. Clark appeals, challenging the constitutionality of the ordinance, Judge Wanamaker's suppression decision, and Judge Rhoades's *corpus delicti* ruling. Clark also claims that there was insufficient evidence to support his conviction.

### Discussion

#### Is AMC 09.28.030 unconstitutional?

■ Under AMC 09.28.030(A), "[t]he owner or operator of a motor vehicle shall have a

current motor vehicle liability policy, or other security that complies with Alaska Statutes Title 28; when operating the vehicle within the municipality." Anchorage Municipal Code 09.28.030(B) makes it unlawful (1) for any person to operate a motor vehicle without proof of the insurance or security required in 09.28.030(A), (2) for any person to fail to produce proof of this insurance or security to a police officer upon demand, or (3) for any person to operate a motor vehicle without the required insurance or security.

Clark claims that this ordinance, on its face, violates his "[s]tate and [f]ederal [c]onstitutional protections of his rights to be free from unreasonable search and seizure, remain silent and against compulsory self-incrimination." Clark argues that the ordinance's requirement that motorists produce proof of insurance unlawfully compels motorists to incriminate themselves, to speak against their will, and violates their right to refuse to submit to a search.

We reject these claims. Nothing on the face of the ordinance unlawfully compels motorists to incriminate themselves, to speak against their will, or to consent to a search. Clark provides no authority supporting his claim that the Municipality cannot require motorists, when operating a motor vehicle within the municipality, to carry proof of the required motor vehicle insurance and to present this proof when lawfully contacted by police during a traffic stop. When a police officer stops a motorist for a traffic violation, "the officer may ask the motorist to produce routine driving documents." [2] Clark does not address case law from other jurisdictions consistently recognizing that proof of insurance, a driver's license, and a vehicle registration are routine driving documents. [3]

---

**2.** *United States v. Maldonado*, 356 F.3d 130, 134 (1st Cir.2001).

**3.** *See, e.g., Chang v. State*, 270 Ga.App. 814, 608 S.E.2d 283, 285 (2004) ("[I]t does not unreasonably expand the scope or duration of a valid traffic stop for an officer to prolong the stop to immediately investigate and determine if the driver is entitled to continue to operate the vehicle by checking the status of the driver's license, insurance, and vehicle registration[.]") (quoting *State v. Williams*, 264 Ga.App. 199, 590 S.E.2d 151, 154 (2003)); *State v. Prince*, 136 N.M. 521, 101 P.3d 332, 336 (App.2004) ("During a traffic stop, the officer may conduct a de minimis investigatory detention to inquire about license, registration, and insurance, and to run a wants and warrants check."); *Maysonet v. State*, 91 S.W.3d 365, 373 (Tex.Crim.App.2002) (during a traffic stop, an officer is permitted to ask the driver for their license, proof of registration, and insurance, and may also inquire as to the motorist's destination and the purpose of the trip); *State v. Hoang*, 101 Wash.App. 732, 6 P.3d 602, 606 (2000) (officer asked only the questions that would be asked on a routine traffic stop: "Do you have a driver's license? May I see the vehicle registration? May I see the certificate of

In addition, routine traffic stops generally do not implicate the constitutional right to remain silent,[4] and Clark has not explained what legitimate privacy interest he has in a document that shows that he has the required insurance.[5]

Clark argues that under *Elson v. State*,[6] the Municipality cannot comment on his refusal to consent to a legal search. But Clark has not shown that he had a Fourth Amendment right to refuse to produce proof of insurance. As we pointed out when we discussed *Elson* in *Srala v. Anchorage*,[7] if a driver arrested for driving while intoxicated does not have a Fourth Amendment right to refuse a breath or blood test, then the government's "comment on the refusal of an offered blood test does not chill the exercise of [f]ourth [a]mendment rights."[8]

In short, nothing in Clark's briefing supports his claim that the ordinance he challenges violates motorists' constitutional rights "to be free from unreasonable search and seizure, remain silent and against compulsory self-incrimination."

### Was there a Miranda violation?

■ Clark renews his claim that the police violated *Miranda* when they asked him to produce proof of insurance. He argues that when the police contacted him during the traffic stop, he was in custody for *Miranda* purposes. But at the conclusion of the evidentiary hearing, Judge Wanamaker found that there was no indication that Clark was

in custody when he spoke with Officer Haskins. Clark has not shown that these findings were clearly erroneous.[9]

Clark claims that at trial, Officer Paiz testified that Clark was not free to go when he was stopped because "[c]itations were going to be issued for various violations." But issuing citations during a traffic stop for "various violations" is part of a routine traffic stop. This testimony does not establish custody for *Miranda* purposes. Clark presented no reason at trial, nor does he on appeal, for excluding the statement he made to Officer Haskins when, immediately after stopping him, Officer Haskins asked him for his driver's license, his vehicle's registration, and proof of insurance. Based on our review of the evidence presented at the pre-trial hearing, we agree with Judge Wanamaker's conclusion that Haskins's interaction with Clark was an ordinary traffic stop, and that Clark was not in custody for *Miranda* purposes.

### Was the corpus delicti rule violated?

■ Clark claims that the *corpus delicti* rule was violated when Judge Rhoades allowed the prosecutor to introduce Clark's statement that he had no insurance. Judge Rhoades found that there was sufficient independent corroborating evidence to satisfy the *corpus delicti* rule. The evidence that Judge Rhoades found to independently corroborate Clark's admission was that Clark, when asked, was able to produce his driver's li-

---

insurance?"); *Campbell v. State*, 97 P.3d 781, 785 (Wyo.2004) ("During a routine traffic stop, a law enforcement officer may request the driver's proof of insurance, operating license, and vehicle registration, run a computer check, and issue a citation or warning.").

4.  See, e.g., *Berkemer v. McCarty*, 468 U.S. 420, 439–40, 104 S.Ct. 3138, 3150, 82 L.Ed.2d 317 (1984) (holding that *Miranda* does not apply when a motorist is subjected to roadside questioning during a routine traffic stop); *Blake v. State*, 763 P.2d 511, 514–15 (Alaska App.1988) (holding that police officers are not required to give *Miranda* warnings during an investigative stop unless and until the initial stop ripens into "custody").

5.  See, e.g., *Smith v. State*, 510 P.2d 793, 797 (Alaska 1973) (adopting for Alaska the test set out in *Katz v. United States*, 389 U.S. 347, 361, 88

S.Ct. 507, 516, 19 L.Ed.2d 576 (1967)); *Pearce v. State*, 45 P.3d 679, 682 (Alaska App.2002) ("Before a person can complain of a search or seizure conducted by the government, the person must establish that they had a protected privacy interest in whatever was searched or seized.").

6.  659 P.2d 1195 (Alaska 1983).

7.  765 P.2d 103 (Alaska App.1988).

8.  *Id.* at 105.

9.  See *Berkemer*, 468 U.S. at 439–40, 104 S.Ct. at 3150 (*Miranda* does not apply when a motorist is subjected to roadside questioning during a routine traffic stop); *Blake*, 763 P.2d at 514–15 (police officers not required to give *Miranda* warnings during an investigative stop unless and until the initial stop ripens into "custody").

cense and vehicle registration, but was unable to produce proof of insurance.

■ In Alaska, the reason for the *corpus delicti* rule is to ensure that there is "substantial independent evidence" that "tends to establish the trustworthiness" of a defendant's admission or confession.[10] As explained in *Drumbarger v. State*,[11] "to establish *corpus delicti*, ... the [S]tate need not independently prove all of the elements of the crime. Rather, it need only introduce 'substantial independent evidence which would tend to establish the trustworthiness of the statement.'"[12] In this case, Haskins's observations that Clark did produce his license and his registration when asked, but could not produce his proof of insurance, is circumstantial evidence that he did not have either proof of insurance, or motor vehicle liability insurance. This circumstantial evidence was sufficient to independently corroborate Clark's admission that he had no insurance.

Clark argues that his conduct—that is, his inability to produce proof of insurance—was itself a statement, and thus could not be used to corroborate his admission. But state law[13] and the municipal code provision in question here both impose a duty on all drivers to present proof of insurance to a police officer on demand. We therefore agree with Judge Rhoades that Clark's failure to act in compliance with his statutory duty to act satisfied the *corpus delicti* rule because it tended to establish the trustworthiness of his statement that he did not have insurance.

### Was there insufficient evidence to support Clark's conviction?

Clark's claim that there was insufficient evidence to support his conviction arises from his claim that Judge Rhoades erred by allowing the State to introduce Clark's statement that he had no insurance. But we have just held that this evidence was properly introduced. Hence, viewing the evidence in the light most favorable to upholding the conviction,[14] there was sufficient evidence that Clark was operating a vehicle without insurance.

### Conclusion

The decisions of the district court are AFFIRMED.

MANNHEIMER, Judge, concurring.

The *corpus delicti* issue that Clark raises in this appeal is not as meritless as the majority opinion suggests. Several courts have struggled with the doctrine of *corpus delicti* in the context of a motorist's failure to be licensed or to be properly insured:

See *State v. Villa*, 179 Ariz. 486, 880 P.2d 706, 707–08 (App.1994); *People v. Lara*, 30 Cal.App.4th 658, 35 Cal.Rptr.2d 886, 895–96 (1994); *People v. Servin*, unpublished, 2004 WL 1638163 at *1 (Cal.App.2004); *People v. Leandro D.*, unpublished, 2004 WL 516699 at *3–*4 (Cal.App.2004); *State v. Ferris*, unpublished, 2001 WL 243424 at *6–*7 (Ohio App. 2001); *Commonwealth v. Herb*, 852 A.2d 356, 363–65 (Pa.Super.2004); *Davis v. Commonwealth*, 17 Va.App. 666, 440 S.E.2d 426, 430–31 (1994).

However, Clark does not cite any of these cases, or any similar ones. Rather, Clark's particular *corpus delicti* argument rests solely on the assertion that his act of failing to produce proof of vehicle insurance was not corroborative conduct, but was simply an additional "statement"—as that term is defined (for purposes of the hearsay rule) in Alaska Evidence Rule 801(a)(2). In other words, Clark contends that, by failing to produce an insurance document, he intended to make a non-verbal assertion of fact: the assertion that he had no insurance. And, based on this contention that his failure to produce proof of insurance must be deemed a "statement", Clark argues that the government's proof rested solely on his out-of-court statements.

---

**10.** *Armstrong v. State*, 502 P.2d 440, 447 (Alaska 1972) (citation omitted).

**11.** 716 P.2d 6 (Alaska App.1986).

**12.** *Id.* at 12 (quoting *Armstrong*, 502 P.2d at 447).

**13.** AS 28.22.019.

**14.** *See Dorman v. State*, 622 P.2d 448, 453 (Alaska 1981).

There is no merit to Clark's contention that his failure to produce an insurance document should be deemed a non-verbal assertion of fact. One might easily *infer*, from Clark's failure to produce an insurance document upon request, that he had no such document, and hence no insurance. But these are merely inferences to be drawn from his conduct. There is no suggestion in the record that Clark *intended* his conduct to be understood as an assertion of fact. Under Evidence Rule 801(a)(2), it is this intention—or lack of it—that determines whether non-verbal conduct is a "statement" for hearsay purposes. Thus, the trial judge could properly reject Clark's contention that his failure to produce proof of insurance was a "statement".

Because Clark's particular *corpus delicti* argument is meritless, and because he has failed to argue the issue in any other fashion, I agree with my colleagues that we should affirm the district court's ruling on this issue.