COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS



| | | |
|---|---|---|
| CHRISTOPHER MIRANDA, | § | |
| | | No. 08-15-00349-CR |
| Appellant, | § | |
| | | Appeal from the |
| v. | § | |
| | | 120th District Court |
| | § | |
| THE STATE OF TEXAS, | | of El Paso County, Texas |
| | § | |
| Appellee. | | (TC# 20130D04013) |
| | § | |

## O P I N I O N

Appellant Christopher Miranda appeals his convictions for improper relationship between educator and student, sexual assault of a child, and sexual performance by a child. In three issues, Miranda contends: (1) the trial court erred in admitting statements made during an interview with a school administrator in which Miranda confesses to sexual activity with three of his students because he claims the statement was a product of custodial interrogation, thus requiring he be given his *Miranda* warnings as required under Articles 38.22 and 38.23 of the Texas Code of Criminal Procedure and the U.S. and Texas Constitutions; (2) the trial court erred in denying his request for a voluntariness instruction in the jury charge; and (3) there was legally insufficient evidence to find him guilty on all counts. For the reasons that follow, we reverse and render in part and affirm in part.

## BACKGROUND

This case began when the assistant principal of an El Paso high school was approached with information that the gymnastics coach, Christopher Miranda, was having an inappropriate sexual relationship with a student. The official policy of the school district was that employees were not allowed to engage in sexual relationships with students at any time, even if the relationship would not otherwise violate state law. When an allegation of an inappropriate relationship with a student is made, school policy required the employee be brought in and placed on paid administrative leave to ensure student safety pending resolution of the investigation.

The assistant principal brought the allegations to the attention of Bobbi Russell, the director of employee relations for the school district. Russell testified her primary function was to investigate misconduct in the workplace, ranging from sexual misconduct to mere tardiness by employees. Russell called Miranda to her office and placed him on administrative leave, explaining that he was alleged to be having an inappropriate relationship with a female student. At this meeting, Miranda provided a handwritten statement to Russell denying the allegations. Miranda was twenty-four at the time and had been working at the high school for a little under two years when the incident was reported.

Two days later, Russell called Miranda back into her office to discuss her investigation. Russell made two sequential recordings of this interview. In the first recording, Russell asked Miranda if he had followed the term of his administrative leave that he have no contact with students and he responded that he had. Russell reminded him that lying during an investigation is grounds for immediate termination, and again asked him if he had followed the directive. Miranda hesitantly replied that he had spoken to a student about the gymnastics team but trailed

2

off before completing his thought. Russell injected, "That is not true. I'm going to ask you one more time: what did you tell Diego?" After a brief pause, Miranda stated, "I'm sorry, I'm feeling a little bit of pressured right now," to which Russell responded "You should feel pressured right now . . . I have evidence that you were texting students sexually." Russell then asked Miranda if he found it common practice to ask his students to have sex with him. Miranda denied ever saying any such thing to a student. Russell asked him why one of the students was able to describe his bedroom, and he replied by denying having an inappropriate relationship with any of his students. The audio recording abruptly ended.

The second recording picks up approximately five minutes after the first had ended. Russell resumed the interview by explaining that during the interlude she had offered to give Miranda the opportunity to change any statements he had previously made and had told him his best interests would be served by being honest. She then pointedly asked Miranda why he had asked P.V.[1] to have sex with him. A long silence ensued, and Russell asked him what school year it had been when he asked P.V. to have sex with him. Miranda responded, "2011." Russell softened her tone and assured Miranda that she understood why he was nervous but admonished him that it was in his best interests to be honest. She asked him how he responded to the fact that he had texted P.V. a description of the sexual acts he wanted to perform on her, and he stated, "I'm ashamed of it."

Russell shifted the conversation and asked Miranda how a second student, K.R., had gone from being one of his students to "something a little more risqué." Miranda detailed how K.R.

---

[1] The students involved were minors at the times of the offenses. Their names are redacted in accordance with Texas Rules of Appellate Procedure 9.10. TEX.R.APP.P. 9.10.

3

had initially wanted more one-on-one coaching in gymnastics, and how he had obliged and gotten closer to her on a personal level.   After quietly listening, Russell told Miranda, "I need you to be one hundred percent honest, like we said, it's in your best interest, coach—did you ever pick her up from her house at midnight?"   Miranda responded that he had.   He then discussed, with some prodding by Russell, what had happened after he had picked her up.   The two drove around, and at some point began kissing.   Miranda stated he knew that kissing her was wrong but confirmed he did not attempt to stop.   He stated the two then went to the home of one of K.R.'s friends and had sex in the basement.   Miranda's voice was unsteady, and he paused for long intervals during the discussion.   Russell told him that she was aware he was nervous and that she would be nervous as well if she were in his shoes.   After detailing the story, Russell asked him to confirm he was admitting to having sex with a student, and he confirmed that he was.   She asked him if he was aware that his admission was grounds for termination and he responded affirmatively.

Russell advised Miranda that she was going to stop the recording, but then paused and asked Miranda to be honest and tell her if there were any other students he had been intimate with. He stated there were not any.   Russell asked if he was sure there were not any others, and Miranda cleared his throat and went silent.   Breaking the silence, Russell stated, "I think you and I both know there's probably someone else, correct?"   Miranda agreed that there was another student. Russell asked for the student's name.   Miranda sighed and went silent for more than a minute of the recording.   Russell injected that she understood he was scared and that she would be too, but that she needed to know if there were any other students he had been intimate with; not just sexual intimacy, she added, but kissing, touching, fondling, hugging, or the like.   Miranda remained silent.   Russell asked him if he had had sex with P.V., and after a brief pause, Miranda responded

4

that he had. She pressed him for another name, averring that he had been at the school only two years and that she now knew he had already had sexual intercourse with two students. Miranda revealed that there was indeed one more student, I.G., who he stated was in the junior class at the high school. After asking him whether any of his coworkers were aware of his actions and receiving a negative response, Russell concluded the interview.

Russell testified that after stopping the recording she informed Miranda he could either resign or the district would seek his termination. He chose to resign. Russell asked him to give her a second written statement to ensure she had all of the information on the students that could have been affected. In the statement, Miranda admitted to having sexual intercourse with P.V. and K.R., but denied having intercourse with I.G. Miranda left the office after resigning. As soon as he left, Russell reported what she had learned to the director of safety, J.R. Martinez, and he contacted the El Paso Police Department.

At trial, the State introduced Russell's audio recordings along with the signed confession. One of the victims, K.R., also testified for the State. She stated that she first met Miranda while taking his gymnastics class and that she was sixteen at the time. She claimed that Miranda had begun texting her casually and that she did not think this was out of the ordinary because at the time she considered Miranda to be someone she could trust. She relayed that one evening he sent her a text message inviting her to hang out with him. K.R. accepted the invitation and sneaked out of her parents' home around midnight and met up with Miranda, who had parked around the block away from the home. The two engaged in small talk and drove around, eventually stopping at Miranda's parents' home.[2] They proceeded up a narrow staircase to Miranda's bedroom. K.R.

---

[2] Miranda was living with his parents at the time.

stated the two sat down on the bed and Miranda began playing a video game. Eventually, Miranda finished his game and began speaking with K.R. She testified he took her phone away and put it aside and began moving closer to her on the bed. He leaned in and started kissing her face. K.R. testified she felt very uncomfortable and told him to stop but that he had responded "Oh, come on," and continued trying to kiss her. Miranda lifted her up and moved her to the center of the bed. She stated she again told him to stop but that he continued to kiss her and began taking her clothes off. She said she was afraid to force him off of her because he was much larger, and because she was worried about upsetting him. She testified he then pulled her pants off, pulled down his shorts, and crawled on top of her. K.R. continued telling him to stop but he removed her shirt and kept kissing her. He began having sexual intercourse with her. She stated that after a while, Miranda pulled out and ejaculated on the side of the bed. The two lied on the bed for some time and Miranda eventually drove her home. When he dropped her off, Miranda told K.R. to "stop acting weird," and left.

K.R. testified she continued going to gymnastics class and would see Miranda but that he acted as though nothing had ever happened. On cross-examination, she admitted to being called into Bobbi Russell's office at the high school on two occasions to discuss the matter and denied it had happened on both occasions. She also admitted that a few months after the incident she had invited Miranda to go to a carnival with her, but that he turned down her invitation. On redirect, she claimed she had denied the allegations because all of her friends were close to Miranda, and she feared she would lose them if she caused trouble for him. She testified that when the allegations were made public, she was ostracized and harassed by classmates and eventually had to transfer to another school.

6

The jury convicted Miranda of the following charges:   two counts of improper relationship between educator and student (Counts I and III); sexual assault of a child (Count V); and sexual performance by a child (Count VII).[3]   At punishment, the jury sentenced Miranda to ten years' confinement, probated, for the first count of improper relationship between educator and student; ten years' confinement, probated, for sexual assault of a child; four years' confinement for the second count of improper relationship between educator and student; and two years' confinement for sexual performance by a child.   This appeal followed.

## DISCUSSION

### Custodial Interrogation

In his first issue, Miranda contends that Russell's interview was actually a custodial interrogation because Russell was acting as a state agent in obtaining his incriminating statements, and he was thus entitled to the appropriate warnings under Articles 38.22 and 38.23 of the Texas Code of Criminal Procedure.   Because he did not receive these warnings, Miranda contends the trial court erred in denying his motion to suppress all statements made to Russell during the interview.

### *Standard of Review*

A trial court's ruling on a motion to suppress is reviewed for abuse of discretion.   *Elizondo v. State*, 382 S.W.3d 389, 393 (Tex.Crim.App. 2012).   When the trial court's findings of fact are based on an evaluation of credibility and demeanor, a reviewing court is required to afford almost total deference to the trial court's determination of facts, provided they are supported by the record. *Id.*   The trial court's application of the law to the facts, however, is reviewed *de novo*.   *Lerma v.*

---

[3]  The jury acquitted Miranda of Counts II, IV, VI, and VIII.

*State*, 543 S.W.3d 184, 190 (Tex.Crim.App. 2018).

### *Applicable Law*

The well-known procedural safeguards of *Miranda* are embodied in Article 38.22 of the Texas Code of Criminal Procedure and apply to custodial interrogations conducted by law enforcement officers or their agents. *State v. Cruz*, 461 S.W.3d 531, 536 (Tex.Crim.App. 2015); *Berry v. State*, 233 S.W.3d 847, 855 (Tex.Crim.App. 2007). These include the necessity of providing suspects with certain warnings, such as the right to remain silent and the right to counsel, prior to interrogation. TEX.CODE CRIM.PROC.ANN. arts. 15.17, 38.22; *Cruz*, 461 S.W.3d at 536. No statement made by a suspect under custodial interrogation is admissible unless these warnings are given and the suspect knowingly, intelligently, and voluntarily waives his rights. TEX.CODE CRIM.PROC.ANN. art. 38.22, §§ 3–4. But state employment does not, by itself, make a person an agent of law enforcement. *Berry*, 233 S.W.3d at 855 (CPS worker not an agent of law enforcement unless the parallel paths of police and CPS worker converge). "Agency" denotes a consensual relationship between two parties in which one of them is acting for or on behalf of the other. *Wilkerson v. State*, 173 S.W.3d 521, 529 (Tex.Crim.App. 2005). The law does not presume the existence of an agency relationship and the party alleging such a relationship has the burden of proving its existence. *Id.* The Court of Criminal Appeals has set forth three areas of inquiry for determining if a party is acting as an agent of law enforcement:

> (1) Was law enforcement using the party to accomplish what it could not lawfully accomplish itself?
>
> (2) Did the party believe it was acting as an agent of law enforcement?
>
> (3) Would a reasonable person in the defendant's place believe the party was an agent of law enforcement?

8

*Wilkerson*, 173 S.W.3d at 530–31; *see also Lopez v. State*, No. 04-16-00774-CR, --S.W.3d--, 2018 WL 3129467, at *3 (Tex.App.--San Antonio June 27, 2018, no pet. h.).

As to custody, there are four general situations that may constitute custody and thus require the warnings of Article 38.22: "'(1) when the suspect is physically deprived of his freedom of action in any significant way, (2) when a law enforcement officer tells the suspect that he cannot leave, (3) when law enforcement officers create a situation that would lead a reasonable person to believe that his freedom of movement has been significantly restricted, and (4) when there is probable cause to arrest and law enforcement officers do not tell the suspect that he is free to leave.'" *State v. Saenz*, 411 S.W.3d 488, 496 (Tex.Crim.App. 2013)(*quoting Dowthitt v. State*, 931 S.W.2d 244, 255 (Tex.Crim.App. 1996)). The first three situations require the suspect's freedom of movement to be restricted to the degree associated with arrest, not merely that of an investigative detention. *Id*. The fourth requires the manifestation of probable cause to be combined with other circumstances that would lead a reasonable person to believe that he is under restraint to the degree associated with an arrest. *Id*.

### *Analysis*

Here, Miranda contends that Russell's questions, manner, and conduct were aimed at eliciting incriminating responses from him, and that he was restrained by the school district to attend the meeting with Russell under threat of losing his job. These factors combined, Miranda asserts, constituted custodial interrogation. The trial court concluded in its findings that Miranda's statements to Russell were not a result of custodial interrogation and that his statements were voluntary. Miranda's argument primarily focuses on showing Russell was an acting agent of law enforcement, but there is a more fundamental problem with his contention: he must also

9

have been in custody to trigger the warning requirements. TEX.CODE CRIM.PROC.ANN. art. 38.22, §§ 3–4. Applying the first three *Saenz* factors, nothing in the record suggests that Miranda's freedom of movement was restricted to the degree associated with arrest. He attended an interview in an unlocked room in the context of a workplace misconduct investigation being conducted by the director of employee relations. While Miranda complains that he felt "pressured" and that he was restrained under threat of losing his employment, this does not constitute restriction associated with formal arrest. *Saenz*, 411 S.W.3d at 496. Further, Russell repeatedly referred to her investigation in the context of his possible termination, never implied police involvement, never told Miranda that he was not at liberty to leave, and later testified she would have allowed him to leave if he had asked. As to the fourth *Saenz* factor, nothing in the record indicates that after Miranda admitted his behavior the circumstances were such as would lead a reasonable person to believe he was under the restraint associated with an arrest. *Id*. Quite the contrary. Miranda was given the choice of resigning or having the school district seek his termination; he chose to resign, gave a written statement of his actions, and left the office as soon as he had given the statement. Accordingly, Miranda has failed to demonstrate he was in custody at the time of his interview with Russell.

Even assuming for the sake of argument that Miranda was in custody at the time of his interview in Russell's office, he has also failed to demonstrate Russell was acting as an agent of law enforcement. The trial court's conclusion that Russell was not acting as an agent of law enforcement was based upon the following relevant findings of fact:

> 45. There is no evidence that [Russell] reported any information she had gained through her investigation to nor had any contact with any law enforcement agency through her second interview with Miranda.

46. There was no evidence that police knew that [Russell] was going to interview Miranda.

47. There was no evidence that police arranged the meeting between [Russell] and Miranda.

48. Police were not present during any of the interviews between [Russell] and Miranda.

49. There was no evidence that police provided [Russell] with questions to ask Miranda.

50. There was no evidence that police gave instructions—implicit or explicit—for [Russell] to obtain certain information from Miranda.

51. There was no evidence that there was a 'calculated practice' between the police and [Russell] that was likely to evoke an incriminating response from Miranda.

52. There was no evidence that police were using [Russell]'s interview to accomplish what they could not lawfully accomplish themselves.

53. The change is [sic] [Russell]'s demeanor from the first interview to the second is suspicious, but the Court has no evidence about contact with law enforcement in any way.

Affording deference to the trial court's findings of fact, as we are required to do, the record supports that Russell was not acting on behalf of the El Paso Police Department and did not discuss her interview with or provide copies of it to law enforcement officers. *Miranda*'s purpose is to protect against physical or psychological pressure being used against an individual that is in custody and subjected to questioning by law enforcement officers or those working on their behalf. *Wilkerson*, 173 S.W.3d at 526. Miranda has failed to carry his burden to demonstrate that he was both in custody and subjected to an interrogation by an agent of law enforcement. *Id.*, at 529. Accordingly, Miranda's first issue is overruled.

**Voluntariness Instruction**

In his second issue, Miranda contends the trial court erred in failing to include his requested

11

instructions on the voluntariness of his confession and waiver of his *Miranda* rights.

## *Applicable Law*

A criminal defendant may claim that a statement he made was not freely and voluntarily made, and thus may not be used as evidence against him, under three different theories: (1) Article 38.22, Section 6 of the Texas Code of Criminal Procedure, which governs general voluntariness; (2) *Miranda v. Arizona*, as expanded in Article 38.22, Sections 2 and 3 (also known as the Texas confession statute); or (3) the Due Process Clause. *Oursbourn v. State*, 259 S.W.3d 159, 169 (Tex.Crim.App. 2008). The theory of involuntariness determines whether and what type of an instruction is appropriate; thus, the first step in deciding upon the appropriateness of a jury instruction is identifying the theory of involuntariness. *Id.* The Due Process Clause is only applicable to police overreaching, not to protecting people from themselves or private actors. *Id.*, at 169-70. Similarly, *Miranda v. Arizona* and Article 38.22, Sections 2 and 3 are only applicable to a defendant's statements made under custodial interrogation. TEX.CODE CRIM.PROC.ANN. art. 38.22, §§ 2–3; *Oursbourn*, 259 S.W.3d at 171. But Section 6 of Article 38.22—concerning general voluntariness—applies to both custodial and non-custodial statements, including statements taken by a private person. *Oursbourn*, 259 S.W.3d at 171–72. The inquiry in a situation involving a non-custodial statement is whether it appears—as Article 38.21 requires—that the statement was freely and voluntarily made without compulsion or persuasion. TEX.CODE CRIM.PROC.ANN. art 38.21; *Oursbourn*, 259 S.W.3d at 172. The types of fact scenarios that raise a voluntariness issue under Section 6 include: (1) the suspect was ill and on medication and that may have rendered his confession involuntary; (2) the suspect was mentally retarded and may not have knowingly, intelligently, and voluntarily waived his rights; (3) the suspect otherwise lacked

12

the mental capacity to understand his rights; (4) the suspect was intoxicated and did not understand what he was signing; (5) the confession was beaten out of the suspect; and (6) the suspect was being questioned by an armed victim, such as the owner of a store the suspect had just broken into. *Id*., at 172-73; *Morales v. State*, 371 S.W.3d 576, 583–84 (Tex.App.--Houston [14th Dist.] 2012, pet. ref'd). Questioning that is aggressive, emotional, highly persuasive, or intelligently calculated to elicit confessions does not raise a voluntariness question under Section 6. *Morales*, 371 S.W.3d at 589.

### *Analysis*

As we have already held, Russell's interrogation of Miranda was not a custodial interrogation and Russell was not an agent of law enforcement. Accordingly, *Miranda v. Arizona* and Article 38.22, Sections 2 and 3 are inapplicable. TEX.CODE CRIM.PROC.ANN. art. 38.22, §§ 2–3; *Oursbourn*, 259 S.W.3d at 171. Miranda's theory of involuntariness must advance, if at all, under general voluntariness as governed by Section 6 of Article 38.22. *Oursbourn*, 259 S.W.3d at 172. During the interview, Miranda seemed nervous, was visibly shaken, and stated that he felt "a little pressured." Russell told him he should feel pressured and that she would be nervous if she were in his shoes, she was alternately aggressive and sympathetic, and told him that it was in his best interests to cooperate. No evidence was presented, however, that Miranda lacked the capacity to understand his rights, was on medication or was intoxicated, or was physically coerced in any way. While the questioning was no doubt unpleasant for Miranda, and Russell's questioning turned out to be highly persuasive, as the trial court correctly concluded, none of the facts presented raised a voluntariness issue under Section 6. *See Oursbourn*, 259 S.W.3d at 172. Accordingly, the trial court did not err in refusing to instruct the jury regarding general

13

voluntariness.   Miranda's second issue is overruled.

**Sufficiency of the Evidence and *Corpus Delecti***

In his third and final issue for review, Miranda contends that no rational trier of fact could have found that the State proved all essential elements of the offenses charged in Counts I (improper relationship), III ( improper relationship), V (sexual assault of a child younger than 17 years), and VII (sexual performance of a child younger than 18 years) beyond a reasonable doubt because the evidence was factually insufficient to support a conviction on all counts.   Because the courts of this state no longer conduct factual sufficiency analyses in criminal cases, we construe Miranda's contention as a legal sufficiency challenge.[4]   Miranda was convicted of two counts of improper relationship between educator and student, sexual assault of a child, and sexual performance by a child.

*Standard of Review*

In a legal sufficiency challenge, the reviewing court does not act as a thirteenth juror, reweighing the evidence and substituting its judgment for that of the jury.   *Dewberry v. State*, 4 S.W.3d 735, 740 (Tex.Crim.App. 1999), *holding modified by Guidry v. State*, 9 S.W.3d 133 (Tex.Crim.App. 1999).   We view the evidence in the light most favorable to the verdict and will uphold the conviction if there is sufficient evidence to justify a jury to rationally find the appellant guilty beyond a reasonable doubt on all essential elements of the offense.   *Salinas v. State*, 163 S.W.3d 734, 737 (Tex.Crim.App. 2005).   "Each fact need not point directly and independently to

---

[4] The *Jackson v. Virginia* legal-sufficiency standard is the only standard used by a reviewing court in determining whether the evidence presented is sufficient to support each essential element of a criminal offense.   *See Brooks v. State*, 323 S.W.3d 893, 912 (Tex.Crim.App. 2010); *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979).

14

guilt if the cumulative force of all incriminating circumstances is sufficient to support the conviction." *Nisbett v. State*, 552 S.W.3d 244, 262 (Tex.Crim.App. 2018). Because evidence must be considered cumulatively, we are not permitted to use a "divide and conquer" strategy for evaluating the sufficiency of the evidence. *Id.* The evidence is measured against the hypothetically correct jury charge. *Villarreal v. State*, 286 S.W.3d 321, 327 (Tex.Crim.App. 2009). A hypothetically correct jury charge lists all elements of the offense, is consistent with the indictment, and does not unnecessarily increase the prosecution's burden of proof. *Id.*

### *Applicable Law*

Under the Texas Penal Code, the offense of improper relationship between an educator and student occurs when an employee of a public or private primary or secondary school engages in sexual contact, sexual intercourse, or deviate sexual intercourse with a person who is enrolled in a public or private primary or secondary school at which the employee works.[5] TEX.PENAL CODE ANN. § 21.12(a)(1). Sexual assault of a child, as relevant here, occurs when a person intentionally

---

[5] Although not applicable here, the offense is also committed if the employee:

> (2) holds a position described by Section 21.003(a) or (b), Education Code, regardless of whether the employee holds the appropriate certificate, permit, license, or credential for the position, and engages in sexual contact, sexual intercourse, or deviate sexual intercourse with a person the employee knows is:
>
> (A) enrolled in a public or private primary or secondary school, other than a school described by Subdivision (1); or
>
> (B) a student participant in an educational activity that is sponsored by a school district or a public or private primary or secondary school, if students enrolled in a public or private primary or secondary school are the primary participants in the activity; or
>
> (3) engages in conduct described by Section 33.021, with a person described by Subdivision (1), or a person the employee knows is a person described by Subdivision (2)(A) or (B), regardless of the age of that person.

TEX.PENAL CODE ANN. § 21.12(a).

or knowingly causes the penetration of the anus or sexual organ of a child by any means, regardless of whether the person knows the age of the child at the time of the offense. TEX.PENAL CODE ANN. § 22.011(a)(2)(A). The statute defines "child" as a person younger than seventeen years of age. TEX.PENAL CODE ANN. § 22.011(c)(1). Finally, the offense of sexual performance by a child is committed when a person, knowing the character and content thereof, employs, authorizes, or induces a child younger than eighteen years of age to engage in sexual conduct or a sexual performance. TEX.PENAL CODE ANN. § 43.25(b).

### *Analysis*

Miranda contends that the evidence was insufficient to support his convictions because his confessions were not sufficiently corroborated by other evidence. Under the *corpus delicti* rule, when the state relies on an extrajudicial confession of the accused to support a conviction, there must be independent corroborating evidence showing that a crime has actually been committed. *Nisbett*, 552 S.W.3d at 263; *Fisher v. State*, 851 S.W.2d 298, 302–03 (Tex.Crim.App. 1993)("The common law corpus delicti rule holds that no criminal conviction can be based upon a defendant's extrajudicial confession *unless* the confession is corroborated by independent evidence tending to establish the corpus delicti.")[Emphasis in original]. When the burden of proof is beyond a reasonable doubt, a defendant's extrajudicial confession, standing alone, is not legally sufficient evidence of guilt. *Dansby v. State*, 530 S.W.3d 213, 224 (Tex.App.--Tyler 2017, pet. ref'd). "Corpus Delicti" simply means the crime itself, and is a requirement imposed on the state to prevent the possibility of a defendant being convicted of a crime based solely on his own false confession to a crime that never occurred. *Nisbett*, 552 S.W.3d at 263; *Fisher*, 851 S.W.2d at 303.

16

Here, the primary corroborating evidence presented by the State was the testimony of one of the victims, K.R. K.R. testified that she was sixteen at the time of the incident with Miranda. She testified that on the evening in question Miranda invited her to hang out and she accepted. While together, Miranda kissed her, took her clothes off, and had sexual intercourse with her. She also testified Miranda knew at the time that she was a student at the high school where he worked. A complainant's testimony alone is sufficient to support a jury finding that sexual contact occurred. *Garcia v. State*, 563 S.W.2d 925, 928 (Tex.Crim.App. [Panel Op.] 1978); *Bargas v. State*, 252 S.W.3d 876, 888 (Tex.App.--Houston [14th Dist.] 2008, no pet.). Accordingly, K.R.'s testimony constituted sufficient evidence to justify a jury to rationally find beyond a reasonable doubt that Miranda intentionally or knowingly caused the penetration of the sexual organ of a child by means of his sexual organ, and thus committed sexual assault of a child. TEX.PENAL CODE ANN. § 22.011(a)(2)(A). Further, it was undisputed that at the time of the sexual contact Miranda was an employee of a public secondary school and that K.R. was one of his students. Therefore, K.R.'s testimony was also sufficient for the jury to find that Miranda, while an employee of the public secondary school, engaged in sexual intercourse with a person enrolled in the school at which he worked, and thus committed the offense of improper relationship between an educator and student beyond a reasonable doubt. TEX.PENAL CODE ANN. § 21.12(a). Accordingly, the evidence was sufficient to find Miranda guilty of Counts III and V.

The remaining counts complained of—Counts I and VII—were improper relationship between an educator and student and sexual performance by a child. Both counts involved the student identified as P.V. In the audio recording and in his written confession, Miranda claimed to have had sexual intercourse with P.V. P.V., however, did not testify at trial. No other

17

corroborating evidence was put forth regarding the allegations involving P.V.   The only additional evidence presented by the State—beyond Miranda's statements and the testimony of K.R.—was a hand-written letter sent from Miranda to the third student, I.G.   In the letter, Miranda acknowledges a relationship between himself and I.G., discusses their anniversary, invites her to the high-school homecoming, and states "Most people would think that finding love between a teacher and a student should be forbidden.   I would not have it any other way though.   I really do feel that I can spend the rest of my life with you."   The letter makes no mention of P.V. or any other students.

The State urges that this letter, combined with K.R.'s testimony, corroborates the counts involving P.V. because it shows his mindset towards young female students.   Alternatively, the State contends that K.R.'s testimony satisfies a closely-related-crimes exception to the *corpus delicti* rule.   The State claims that under this exception, the *corpus delicti* is established for all crimes if one or more of the properly corroborated crimes are closely related to the others, as implicated by a close temporal connection.   In support, the State cites the case of *Miller v. State*, 457 S.W.3d 919 (Tex.Crim.App. 2015).   In *Miller*, the defendant was accused of engaging in illicit sexual conduct with his three-month-old daughter.   *Id*., at 920.   When approached by a detective, the defendant confessed orally and in writing to molesting his daughter on at least three occasions.   *Id*.   A few days later he returned to the police station and confessed to a fourth incident of sexual contact.   *Id*.   All four incidents had occurred during a twenty-seven-day period, and the defendant was charged with four counts of aggravated sexual assault of a child under six years of age.   *Id*.   The State, however, was only able to produce corroborating evidence for one of the counts.   *Id*., at 921.   On appeal, the defendant successfully argued to the court of appeals

that the State had failed to establish the *corpus delicti* of the other three counts and had his convictions set aside as to those counts. *Id.* The Court of Criminal Appeals reversed, carving out an exception to the strict application of the *corpus delicti* rule. *Id.*, at 927. In doing so, the court acknowledged that the *corpus delicti* rule provides essential protections to defendants and declined to replace the rule with the trustworthiness standard adopted by the United States Supreme Court in *Opper v. United States.*[6] *Id.*, at 925. The court held, however, that Texas law recognizes a closely-related-crimes exception to strict application of the *corpus delicti* rule, but qualified that the "exception applies only when the temporal relationship between the offenses is sufficiently proximate that introduction of the extrajudicial confession does not violate the policies underlying the corpus delicti rule." *Id.*, at 927. It then reversed the judgment of the court of appeals and reinstated the defendant's sentences on the three uncorroborated counts. *Id.*, at 929.

We think the present case is distinguishable from *Miller*. In *Miller*, the offenses confessed to all occurred during a twenty-seven-day period, and the court repeatedly emphasized the exception it had created requires the temporal proximity of the offenses to be sufficiently close so that introduction of the confession does not violate the purposes of the *corpus delicti* rule. *Id.*, at 927–29. Although the court did not provide a general time frame that would satisfy the proximity requirement, it did favorably cite in its analysis an Alabama case[7] in which the court had required independent evidence for only one offense when the defendant had confessed to multiple sex crimes over a three-month period. *Id.*, at 927. But here, the alleged crimes occurred over a much longer period. The alleged encounter involving P.V. occurred on or about September 1, 2011.

---

[6] *Opper v. United States*, 348 U.S. 84, 93, 75 S.Ct. 158, 164, 99 L.Ed. 101 (1954).

[7] *Drumbarger v. State*, 716 P.2d 6, 12 (Ala.Ct.App. 1986).

19

The next encounter—that against K.R.—was alleged to have occurred March 1, 2012, precisely six months later. The last encounter—involving I.G.—was alleged to have occurred on October 1, 2012. All told, the three alleged encounters giving rise to the charged offenses occurred over a period spanning a little over a year—substantially longer than the twenty-seven-day period in *Miller* or the three-month period in the favorably cited Alabama case. Further, in *Miller* the offenses were all committed against a single individual—the defendant's daughter. *Miller*, 457 S.W.3d at 920. Here, the offenses were alleged to have been committed against three different victims and there was no evidence that the victims were even aware of Miranda's involvement with the others until the allegations became public. Therefore, we do not think the temporal connection between the offenses confessed by Miranda to be sufficiently close to warrant application of the closely-related-crimes exception to the *corpus delicti* rule; to hold otherwise would violate the purposes of the rule. *Id.*, at 927. Because no evidence was presented that independently corroborated Miranda's confession regarding his offenses committed against P.V., his stand-alone confession was legally insufficient to establish guilt beyond a reasonable doubt. *Nisbett*, 552 S.W.3d at 263; *Fisher*, 851 S.W.2d at 302–03; *Dansby*, 530 S.W.3d at 224. As a result, we must sustain Miranda's third issue as to Counts I (improper relationship) and VII (sexual performance of a child younger than 18 years).

## CONCLUSION

Having sustained Miranda's third issue in part, we reverse Miranda's convictions as to Counts I and VII and render a judgment of acquittal as to those counts. Having overruled Miranda's remaining issues, we affirm the trial court's judgment as to Counts III (improper relationship) and V (sexual assault of a child younger than 17 years). *See* TEX.R.APP.P. 43.2(c).

20

November 9, 2018

YVONNE T. RODRIGUEZ, Justice

Before McClure, C.J., Rodriguez, and Palafox, JJ.

(Do Not Publish)